No. 97-523

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 139

STATE OF MONTANA,

Plaintiff and Respondent,

v.

MARCUS ANGELINE,

Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell C. Fagg, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Carrie Garber, Deputy Public Defender; Billings, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; John Paulson,
Assistant Attorney General; Helena, Montana

Dennis Paxinos, Yellowstone County Attorney; Shawn
Cosgrove, Deputy County Attorney; Billings, Montana

Submitted on Briefs: May 14, 1998

Decided:   June 9, 1998
Filed:

_____
Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1 Marcus Angeline appeals from the decision of the Thirteenth Judicial District Court, Yellowstone County, denying his motion to suppress evidence obtained as a result of an investigatory stop of his vehicle. We reverse and remand.

¶2 The sole issue on appeal is whether the District Court erred in denying Angeline's motion to suppress evidence, in which Angeline argued that Officer Edgell did not have a particularized suspicion to justify an investigatory stop of Angeline's vehicle.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 On August 31, 1996, Marcus Angeline was driving a 1981 Subaru northbound on U.S. Highway 87 outside of Billings, Montana. As he descended a long hill, he passed two vehicles. He completed the pass before the highway began to curve to the west.

¶4 As Angeline was traveling north on Highway 87, Montana Highway Patrol Officer Keith Edgell was heading southbound in the opposite lane toward him. Officer Edgell initiated a traffic stop and informed Angeline that he was stopped for suspicion of violating Montana's basic rule, § 61-8-303, MCA. The traffic stop resulted in Angeline's arrest for driving while under the influence of alcohol and two other offenses.

¶5 Later that day, Angeline was charged by complaint with violations of: (1) § 61-8-401, MCA, driving while under the influence of alcohol, a misdemeanor; (2) § 61-5-212, MCA, driving while license suspended or revoked, a misdemeanor; and (3) § 61-6-301, MCA, failure to have liability protection in effect, a misdemeanor. On September 3, 1996, Angeline appeared in Yellowstone County Justice Court and entered pleas of not guilty to all charged offenses. Angeline was found guilty following a bench trial conducted in Justice Court. On March 20, 1997, Angeline appealed the Justice Court decision to the Thirteenth Judicial District Court, Yellowstone County.

¶6 On April 21, 1997, prior to trial in the District Court, Angeline filed a motion to suppress any evidence obtained as a result of the investigatory stop on August 31, 1996, on the grounds that Officer Edgell did not have a particularized suspicion to initiate the stop. The State replied with a brief in opposition to Angeline's motion on May 2, 1997. The District Court held a hearing on the motion on June 24, 1997. On July 9, 1997, the District Court filed its findings of fact, conclusions of law, and an order denying Angeline's motion to suppress.

¶7 On July 22, 1997, the parties filed a plea agreement. Angeline entered a plea of guilty pursuant to § 46-12-204(3), MCA, reserving his right to appeal the District Court's adverse determination of his motion to suppress. The court accepted the State's sentencing recommendation and sentenced Angeline to concurrent terms of sixty days for driving while under the influence of alcohol, six months for driving with a suspended or revoked license, and ten days for driving without insurance. Under the sentence, all time was suspended except

for two days to be served under house arrest.  The court stayed imposition of the sentence pending Angeline's appeal.

¶8   On August 5, 1997, the District Court entered its written judgment. Also on that day, Angeline filed his notice of appeal, appealing from the judgment of the District Court.

DISCUSSION

¶9   Did the District Court err in denying Angeline's motion to suppress evidence, in which Angeline argued that Officer Edgell did not have a particularized suspicion to justify an investigatory stop of Angeline's vehicle?

¶10  The standard of review for a district court's denial of a motion to suppress is whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law.  State v. Pratt (Mont. 1997), 951 P.2d 37, 54 St. Rep. 1349 (citing State v. Flack (1993), 260 Mont. 181, 185-88, 860 P.2d 89, 92-94.)

¶11  Angeline argues that the District Court erred by denying his motion to suppress.  Angeline contends that the court's findings and conclusions are clearly erroneous because the prosecution failed to present any evidence at the suppression hearing on June 24, 1997, regarding the investigatory stop of Angeline's vehicle on August 31, 1996.  Thus, without testimony from the officer who initiated the traffic stop, Angeline argues the court's conclusion that a legitimate investigatory stop of Angeline's vehicle occurred is unsupported by any evidence.

¶12  In response, the State argues the arresting officer's testimony is not necessary to support the court's finding of a particularized suspicion sufficient to justify the investigatory stop of Angeline's vehicle.  Rather, the State contends that its burden is met by merely presenting objective data supporting an inference of wrongdoing and asserts that evidence may come from any witness, not just the arresting officer.  Thus, the State argues the officer's testimony was not necessary in this case to support the court's finding that the officer had a particularized suspicion to justify the stop.

¶13  At the beginning of the suppression hearing held on June 24, 1997, the prosecution informed the court that Officer Edgell had not yet arrived.  The prosecutor assured the court that he had spoken to Edgell about the hearing and that the officer appeared to be running late.  Based on the prosecution's belief that Edgell would appear, Angeline's counsel volunteered to proceed first.  Defense counsel called Angeline, who testified and was cross-examined about the events leading up to the investigatory stop of his vehicle on August 31, 1996.  After the defense presented its argument, Edgell still had not appeared.  The prosecution called no witnesses to testify and presented no evidence, including the officer's report, at the hearing.

¶14  Therefore, Angeline's testimony and a videotape that was made of the stretch of road Angeline was driving on before he was stopped were the only evidence before the District Court.  At the hearing, Angeline testified that on the day he was pulled over, conditions were bright and clear.  He stated, and

the videotape showed, that he was driving on a brand new freshly paved dry road with wide shoulders on both sides. He stated that his car was in proper working condition with new brakes and could not go over eighty-five miles per hour. Before passing, he stated he had a three-mile open view of the road and that there was no oncoming traffic for miles. He fully explained his actions before, during, and after passing both vehicles on Highway 87 before being pulled over by Officer Edgell.

¶15 At the end of the hearing, the court made its initial ruling, denying the motion to suppress. The court stated:

> The issue is whether there is a particularized suspicion such that the officer could pull you over, and I think under the facts of the case there was. I think 80 to 82, even on good roads, on a secondary road making a pass by a couple of cars before a corner, I will take your word you got in before the corner, is enough for an officer to say "I should pull over this person and talk to him and check out the car," and I think that he had the right to pull you over under the circumstances and under your testimony. I understand why you think you were driving safe. I don't think there was any chance of an accident, but I think there was particularized suspicion to at least pull you over and investigate further.

¶16 Angeline objected to this court's ruling, arguing that because there was no direct testimony from the arresting officer, the State had not met its burden of showing that the officer had a particularized suspicion to make the investigatory stop of Angeline's vehicle. The court then backpedaled from its initial ruling, stating, "I will take the matter under advisement, and state what I just stated as an inclination rather than a ruling." The court ordered both parties to submit proposed findings of fact and conclusions of law. Also, the court allowed Angeline to present case law on whether the State has an obligation to present evidence in order to meet its burden.

¶17 The District Court adopted the State's proposed findings of fact and conclusions of law on July 9, 1997, denying Angeline's motion to suppress. We note the following conclusions of law made by the District Court:

> 13. The critical inquiry is not whether the court believes that a violation of Section 61-8-303, MCA, occurred beyond a reasonable doubt. Rather, the critical inquiry is whether the objective facts as presented by defendant himself give rise to a particularized suspicion that a violation of Section 61-8-303, MCA, occurred. The court believes that driving a sixteen year old vehicle, down a long hill, upon a two-way secondary highway, while passing multiple vehicles at or over 80 MPH, and doing so just before negotiating a corner, are objective facts to support a reasonable belief in an observing law enforcement officer that defendant's driving was neither careful nor prudent.
>
> 14. Regarding question (2), whether the State must come forward at hearing with a witness and provide contrary evidence, Section 46-13-302(2), MCA, is helpful. The operative language is: "If the (defendant's) motion states facts that, if true, would show that the evidence should be suppressed, the court shall hear the merits. . .". Obviously, based upon the plain language of

the statute, if the motion did not state facts that, if true, showed the evidence

should be suppressed, the matter would not even be set for hearing. Clearly, because there would not be a hearing, the State would not be required to present witnesses. Because of defendant's failure to meet the initial burden, the issue would simply not be entertained by the court. In addition, Gopher states the initial inquiry is whether objective data is present upon which an experienced officer can make inferences. The objective data can come from any witness testimony, including the defendant.

15. By analogizing to Section 46-13-302, MCA, and viewing all the evidence presented by defendant at hearing as true, because such facts still do not show that the evidence should be suppressed, the evidence should not be suppressed.

16. Furthermore, through direct and cross-examination of defendant, sufficient facts were introduced into evidence to satisfy the State's Gopher burdens, First, through the defendant, the State demonstrated the existence of objective facts to give rise to a particularized suspicion of wrongdoing, i.e. violation of the Basic Rule. Secondly, through the testimony of defendant, it was made clear that the officer that stopped him had observed these "objective facts" and specifically informed defendant that he was being stopped due to suspicion of a Basic rule violation. Consequently, defendant's motion should be denied.

¶18 We disagree with these conclusions of law made by the District Court. First, under § 46-13-302, MCA, if a defendant's motion to suppress "states facts that, if true would show that the evidence should be suppressed, the court shall hear the merits of the motion." Thus, the defendant must meet this initial burden in order for a court to hold a hearing and decide the motion on its merits. In his motion to suppress filed on April 21, 1997, Angeline met this burden by alleging facts that, if true, might have led to the suppression of the evidence at issue. The facts recited in Angeline's motion were essentially identical to his testimony at the hearing. Angeline represented in his motion that he was going approximately eighty miles per hour before being pulled over for the traffic stop. By deciding to hold a hearing on Angeline's motion to suppress, the District Court agreed that Angeline's motion set forth facts that, if true, would result in the suppression of any evidence obtained as a result of the traffic stop.

¶19 In his motion to suppress, Angeline moved the District Court "to suppress any evidence obtained as a result of the traffic stop in this matter on the grounds . . . that the

officer did not have a particularized suspicion to initiate the traffic stop under §
46-5-401,
MCA."  In Montana, the requirement of particularized suspicion was adopted in State
v.
Gopher (1981), 193 Mont. 189, 631 P.2d 293, and is codified at § 46-5-401, MCA, which
provides:

> Investigative stop.  In order to obtain or verify an account of the person's
> presence or conduct or to determine whether to arrest the person, a peace
> officer may stop any person or vehicle that is observed in circumstances that
> create a particularized suspicion that the person or occupant of the vehicle has
> committed, is committing, or is about to commit an offense.

¶20  In Gopher, this Court adopted the two-part test enunciated by the United States
Supreme Court in United States v. Cortez (1981), 449 U.S. 411, 101 S. Ct. 690, 66 L.
Ed. 2d
621, to evaluate whether the police have sufficient cause or a "particularized
suspicion" to
stop a person.  In asserting that a police officer had the particularized suspicion
to make an
investigatory stop, the State has the burden to show: "(1) objective data from which
an
experienced officer can make certain inferences; and (2) a resulting suspicion that
the
occupant of a certain vehicle is or has been engaged in wrongdoing or was a witness
to
criminal activity."  Gopher, 193 Mont. at 194, 631 P.2d at 296.

¶21  Whether a particularized suspicion exists is a question of fact which depends
on the
totality of circumstances.  State v. Reynolds (1995), 272 Mont. 46, 899 P.2d 540. In
evaluating the totality of the circumstances, a court should consider the quantity,
or content,
and quality, or degree of reliability, of the information available to the officer.
Alabama v.
White (1990), 496 U.S. 325, 330, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d 301, 309.

¶22  Therefore, when a defendant has alleged in a motion to suppress that an officer
did
not have a particularized suspicion to initiate a traffic stop and a district court
believes
that a hearing should be held on the merits of the motion, the burden shifts to the
State. Then,
the State must prove that the police officer did have a particularized suspicion to
make an
investigatory stop, as set forth in the manner proscribed in Gopher and its progeny.

¶23  Although this Court has not specifically stated that the testimony of the
arresting
officer is required in proving particularized suspicion justifying an investigatory
stop,
we fail to see how the State can meet its burden of proving its existence without the
testimony of the arresting officer.  Since Gopher, this Court has had occasion to

review the testimony of the arresting officer in order to evaluate whether the State has met its burden of proof regarding the existence of particularized suspicion. See, e.g., State v. Lee (Mont. 1997), 938 P.2d 637,54 St. Rep. 401; Seyferth v. State, Department of Justice, Motor Vehicle Division (1996), 277 Mont. 377, 922 P.2d 494; Reynolds, 272 Mont. at 51, 899 P.2d at 543. It is only from the testimony of the arresting officer that one can learn what objective data was before the officer that led him to make certain inferences, resulting in a "suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing." Gopher, 193 Mont. at 194, 631 P.2d at 296. Nothing in Gopher or its progeny suggests that a district court should speculate on its own, based on the evidence presented from both parties, as to what an arresting officer may have believed, inferred, or suspected before initiating an investigatory stop. A district court's role is to consider the totality of the circumstances in order to determine whether the State has met its burden in proving a particularized suspicion.

¶24  In this case, the State presented no evidence about what objective data led Officer Edgell to infer or suspect that Angeline had been engaged in wrongdoing. Without the testimony of Edgell, the parties and the District Court could only speculate as to the objective data the officer observed before stopping Angeline. Without Edgell's testimony, the court was left to engage in speculation in its findings and conclusions about what inferences Edgell may have made based on what he may have observed before the investigatory stop and the resulting suspicions that he may have had regarding whether Angeline was engaged in criminal activity. Furthermore, there was no evidence presented regarding Officer Edgell's experience and training that would allow one to evaluate his observations, inferences, and resulting suspicions before initiating the stop of Angeline's vehicle if he had, in fact, testified.

¶25  After a review of the transcript of the suppression hearing, we conclude that the District Court's findings of fact and conclusions of law that Edgell had a particularized suspicion for an investigatory stop of Angeline's vehicle are not supported by any credible

evidence.  The only evidence presented at hearing was the testimony of Angeline and the videotape of the section of Highway 87 where he made the pass.  Angeline's testimony alone, although perhaps self-serving, does not lead one to conclude that Officer Edgell had a particularized suspicion to initiate a stop of his vehicle.

¶26  Because the evidence presented at the hearing did not support the District Court's findings of facts and conclusions of law that Officer Edgell had a particularized suspicion that Angeline had committed, was committing, or was about to commit an offense, we therefore hold that the investigatory stop of Angeline's vehicle was not justified.  We reverse and remand with instructions to enter an order of dismissal consistent with this opinion.

/S/   JIM REGNIER

We Concur:

/S/   J. A.   TURNAGE
/S/   KARLA M. GRAY
/S/   JAMES C. NELSON
/S/   TERRY N. TRIEWEILER