No. 99-052

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 207

295 Mont. 483

985 P.2d 147

STATE OF MONTANA,

Plainitiff and Respondent,

v.

JAY SAMUEL GILDER,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Larry D. Mansch, Office of Public Defender; Missoula, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; John Paulson,

Assistant Attorney General; Helena, Montana

Fred R. Van Valkenburg, Missoula County Attorney;

Scott M. Stearns, Deputy County Attorney; Missoula, Montana

Submitted on Briefs: June 10, 1999

Decided: September 9, 1999

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶ By information filed in the District Court for the Fourth Judicial District in Missoula County, the defendant, Jay Samuel Gilder, was charged with operating a motor vehicle while under the influence of alcohol or drugs, in violation of §§ 61-8-401 and -714, MCA; driving while his license was suspended or revoked, in violation of § 61-5-212, MCA; and obstructing a peace officer, in violation of § 45-7-302, MCA. Gilder filed a motion to suppress all evidence stemming from the stop of his vehicle. The motion was denied, and Gilder entered an *Alford* plea, reserving his right to appeal from the denial of the motion.

We reverse.

¶ The issue on appeal is whether the district court erred when it denied Gilder's motion to suppress.

## FACTUAL BACKGROUND

¶ The District Court did not conduct an evidentiary hearing in this case. However, the following facts, taken from the Missoula County Sheriff's incident report, were considered by the District Court without objection. At approximately 1:30 a.m. on June 26, 1998, Missoula County Sheriff's Deputy Pat Estill observed a vehicle waiting at a traffic light at the intersection of South Avenue and Reserve Street in Missoula. When the light turned green, the vehicle proceeded through the intersection at a slow rate of speed. While Deputy Estill followed the vehicle driven by Gilder, it turned at four intersections within a residential neighborhood. Gilder did not exceed 15 mph, although it was permissable to drive 25 mph on the roads on which he was observed. Deputy Estill decided to talk to Gilder "because he appeared to be casing the neighborhood."

¶ Deputy Estill initiated a traffic stop, following which he noticed the odor of alcohol emanating from the vehicle. Gilder initially provided Deputy Estill with a false name. After determining Gilder's true name, Deputy Estill discovered that Gilder's driver's license was revoked and that he was on parole. Deputy Estill arrested Gilder for driving under the influence of alcohol, obstructing a law enforcement officer, and driving with a revoked license.

¶ Gilder moved to suppress all evidence collected as a result of the stop, based on his contention that Deputy Estill lacked a particularized suspicion to initiate the stop. The District Court issued an opinion and order in which it denied the motion to suppress. Gilder entered an *Alford* plea of guilty to the DUI charge and reserved his right to appeal.

¶ Did the district court err when it denied Gilder's motion to suppress?

¶ We review a district court's denial of a motion to suppress for clearly erroneous findings of fact and to determine whether those findings were correctly applied as a matter of law. A finding is clearly erroneous if it is not supported by substantial evidence, the court has clearly misapprehended the effect of the evidence, or this Court is left with a definite and firm conviction that the district court made a mistake. *See State v. Jarman*, 1998 MT 277,

¶ 8, 967 P.2d 1099, ¶ 8.

¶ The United States Supreme Court has recognized an exception to the general warrant requirement of the Fourth Amendment, pursuant to which a law enforcement officer can make an investigatory stop of a motor vehicle without probable cause when the State can establish: (1) objective data from which an experienced officer can make certain inferences; and (2) a resulting "particularized suspicion" that the occupant of the vehicle is or has been engaged in wrongdoing or was a witness to criminal activity. *See United States v. Cortez* (1981), 449 U.S. 411, 101 S. Ct. 690, 66 L. Ed. 2d 621; *Terry v. Ohio* (1968), 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889. This Court adopted the *Cortez* articulation of the *Terry* stop in *State v. Gopher* (1981), 193 Mont. 189, 194, 631 P.2d 293, 296.

¶ The legislature subsequently codified particularized suspicion at § 46-5-401, MCA, which states:

In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

¶ In order to show sufficient cause to stop a vehicle, the burden is on the State to show: (1) objective data from which an experienced police officer can make certain inferences; and (2) a resulting suspicion that the occupant of the vehicle is or has been engaged in wrongdoing or was witness to criminal activity. *See Jarman*, ¶ 10.

¶ The essence of this test is that the totality of the circumstances must give law enforcement a particularized and objective basis for suspecting the person of criminal activity. *See State v. Reynolds* (1995), 272 Mont. 46, 50, 899 P.2d 540, 544-43. "In evaluating the totality of the circumstances, a court should consider the quantity, or content, and quality, or degree of reliability, of the information available to the officer." *State v. Pratt* (1997), 286 Mont. 156, 161 (citing *Alabama v. White* (1990), 496 U.S. 325, 330, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d 301, 309).

¶ The only record before the District Court in this case was Deputy Estill's written incident

report. Gilder contends that because there was no testimony offered to establish the foundation for Deputy Estill's conclusion in the report that Gilder was "casing" the neighborhood, the State has not met its burden to show a particularized and objective basis for suspecting him of criminal activity.

¶ The incident report states:

At about 0130 hrs on 6-26-98 I did observe (a) Jay Gilder headed east bound on South Avenue. He was stopped at the traffic light at Reserve on South. Gilder proceeded through the intersection when the light turned green at a slow rate of speed. I decided to follow Gilder as he drove east bound.

Gilder turned south onto Clark and drove to Mary Street. His driving appeared okay except he continued to drive slowly. About 15 mph. He then turned east onto May and drove to Eaton. Gilder turned north onto Eaton and then east onto Livingston[.] Because he appeared to be casing the neighborhood[] I stopped Gilder on Livingston near Eaton.

¶ The State contends that Gilder's slow rate of speed and "pointless meandering" through the neighborhood formed an objective basis from which an experienced officer could draw the reasonable inference that the driver was "casing" the neighborhood. It asserts that because the officer's basis for the stop was adequately articulated in the incident report, the court did not need to hear testimony from the officer in order to make a finding that particularized suspicion existed.

¶ In *State v. Angeline*, 1998 MT 139, 289 Mont. 222, 961 P.2d 1251, we addressed the issue of whether the testimony of the arresting officer is required to prove a particularized suspicion justifying an investigatory stop:

Although this Court has not specifically stated that the testimony of the arresting officer is required in proving particularized suspicion justifying an investigatory stop, we fail to see how the State can meet its burden of proving its existence without the testimony of the arresting officer . . . . It is only from the testimony of the arresting officer that one can learn what objective data was before the officer that led him to make certain inferences, resulting in a "suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing." Nothing in *Gopher* or its progeny suggests that a district court should

speculate on its own, based on the evidence presented from both parties, as to what an arresting officer may have believed, inferred, or suspected before initiating an investigatory stop. A district court's role is to consider the totality of the circumstances in order to determine whether the State has met its burden in proving a particularized suspicion.

*Angeline*, ¶ 23 (citations omitted).

¶ While the incident report in this case provides some factual information upon which Deputy Estill based his inference that Gilder was casing the neighborhood, the information was insufficent to support the District Court's conclusion that Deputy Estill had a particularized suspicion to justify an investigatory stop of Gilder's vehicle. The only evidence presented through the incident report was that Gilder was "driving okay except . . . slowly," and that he made a right turn, then a left turn, then another left turn, then another right turn, before Deputy Estill initiated the stop. These facts alone do not demonstrate sufficient objective data from which an experienced officer can make inferences of criminal wrongdoing, and the State was not provided with an opportunity to present additional evidence with which to meet its burden of showing how the facts support an experienced officer's inference of criminal activity.

¶ The State sets forth several cases in which it contends that this Court has held that slow driving can provide a sufficient basis to establish a particularized suspicion. For example, it contends that the stop in this case is analogous to the stop in *Gopher*, where officers stopped the defendant's vehicle after it drove slowly past the scene of a suspected burglary. The State argues that in *Gopher* we concluded that, although the defendant violated no traffic law and did not drive erratically, the defendant's slow driving in that case supported the officer's inference of criminal activity.

¶ In *Gopher*, our conclusion that the officer had a particularized suspicion justifying an investigative stop was based upon circumstances, in addition to the speed at which the suspect's vehicle was operated, and the conclusions an experienced officer was able to draw therefrom. In *Gopher* the particularized suspicion was based upon law enforcement's response to a silent alarm at a pawnshop, where a window had been broken. The responding officer noticed a vehicle driving slowly past the crime scene and exhibiting "an unusual curiosity" in the crime site. The officer testified, based on his past experience as an officer, that it was not uncommon for burglars to return to the scene of a crime after first breaking a window to see if the burglary was likely to be discovered. We concluded

that in light of all the circumstances, the officer had a particularized suspicion which justified the investigatory stop. *See Gopher*, 193 Mont. at 189, 631 P.2d at 294.

¶ While the State correctly points out that the speed at which the defendant operated his vehicle is among those facts from which we concluded that the officer had a particularized suspicion to conduct an investigatory stop of the vehicle, *Gopher* is clearly distinguishable from the instant facts. In *Gopher*, the stop was not based upon the rate of travel alone, but upon all the circumstances, including the silent alarm, the curiosity of the defendants in the crime scene, and the officer's articulable knowledge of patterns of criminal behavior. None of these circumstances are present in this case.

¶ The other cases relied on by the State are also distinguishable on the basis of additional specific, articulable facts, and the officer's testimony which provided the foundation for the inferences which may be drawn therefrom. Because such additional evidence was not provided here, we decline to set forth each case and then distinguish it in detail here.

¶ We conclude that the District Court erred when it denied Gilder's motion to suppress and we reverse the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

No