No. 03-569

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 49

RONALD WIDDICOMBE,

        Petitioner and Appellant,

    v.

STATE OF MONTANA, ex rel., MARY
LAFOND, Chief, DRIVER IMPROVEMENT BUREAU,

        Respondent and Respondent.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Sweet Grass, Cause No. DV 2003-05,
Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Brad L. Arndorfer, Arndorfer Law Firm, P.C., Billings, Montana

        For Respondent:

            Richard Malagisi, County Attorney, Big Timber, Montana

Submitted on Briefs:  February 10, 2004

Decided:  March 2, 2004

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      On the night of February 21, 2003, Ronald Widdicombe was stopped by the Montana Highway Patrol for suspicion of driving under the influence of alcohol.  During the stop, Widdicombe participated in field tests, but refused to provide a breath sample on a preliminary breath test (PBT).  He was arrested and again refused a breath test at the Sheriff's Department.  His driver's license and driving privileges were suspended, and he petitioned the District Court to reinstate the license.  Widdicombe claimed he had been illegally arrested, and the suspension of his license was thus invalid.  After a hearing, the District Court refused to reinstate his driver's license, and Widdicombe now appeals.  We affirm the decision of the District Court.

¶2      We restate Widdicombe's issues on appeal as follows:

¶3      1.  Was there a particularized suspicion to stop Widdicombe's vehicle? and

¶4      2.  Was Widdicombe lawfully arrested?

## FACTUAL and PROCEDURAL BACKGROUND

¶5      On the evening in question, Officer Moody was training Officer Waddell.  As they were driving through the town of Big Timber, Montana, a red Toyota pickup driven by Widdicombe pulled into the lane ahead of them and crossed the center line.  The officers activated the in-car video camera and followed Widdicombe.  Officer Moody later testified that Widdicombe crossed the center line three more times and swerved once within his lane.  Having observed Widdicombe's driving, the officers stopped him.  Moody remained in the patrol car while Waddell approached the pickup.  Waddell was able to smell the odor of

2

alcohol emanating from Widdicombe. Waddell then had Widdicombe walk to the patrol car, which Widdicombe did in a slow, plodding, and deliberate manner. Inside the patrol car, Waddell administered the Horizontal Gaze Nystagmus (HGN) test, on which Widdicombe achieved the maximum of six points, indicating he was intoxicated. Waddell then asked Widdicombe to take the PBT, which he refused. Widdicombe did participate in several more field sobriety tests, after which the officers took him into custody to administer further tests at the station. There, Widdicombe was asked to provide a breath sample on the Intoxilyzer 5000, which he refused to do. It was this refusal that formed the basis of his license revocation.

¶6    Widdicombe argued that merely touching the center line was not a sufficient traffic violation to give rise to a reasonable suspicion to stop a vehicle. The District Court found that Officers Moody and Waddell had reasonable grounds to stop Widdicombe's vehicle and therefore denied Widdicombe's petition. Widdicombe now appeals.

DISCUSSION

¶7    In our review of a district court's denial of a petition for reinstatement of a driver's license, we review the lower court's findings of fact to determine whether they are clearly erroneous and we review the conclusions of law to determine whether they are correct. *In re McKenzie*, 2001 MT 25, ¶ 5, 304 Mont. 153, ¶ 5, 19 P.3d 221, ¶ 5. A suspension of a license is presumed to be correct, and the petitioner bears the burden of proving that the state's action was improper. *Kleinsasser v. State*, 2002 MT 36, ¶ 10, 308 Mont. 325, ¶ 10, 42 P.3d 801, ¶ 10. In such a proceeding, the issues are limited to whether:

3

(i)  a peace officer had reasonable grounds to believe that the person had been driving or was in actual physical control of a vehicle upon ways of this state open to the public while under the influence of alcohol, drugs, or a combination of the two and the person was placed under arrest for violation of 61-8-401;

(ii)  the person is under 21 years of age and was placed under arrest for a violation of 61-8-410;

(iii)  the officer had probable cause to believe that the person was driving or in actual physical control of a vehicle in violation of 61-8-401 and the person was involved in a motor vehicle accident or collision resulting in property damage, bodily injury, or death; and

(iv)  the person refused to submit to one or more tests designated by the officer.

Section 61-8-403(4)(a), MCA.

¶8  We have previously stated that there are three issues to be determined by a district court in a petition for review of a seizure of a driver's license: (1) whether the arresting officer possessed a particularized suspicion that the individual in question had been driving or was in actual physical control of a vehicle upon ways of this state while under the influence of alcohol or drugs; (2) whether the petitioner was lawfully under arrest including the existence of probable cause; and (3) whether the petitioner in fact declined to submit to a breath test.  *Bush v. Montana Dept. of Justice,* 1998 MT 270, ¶¶ 11-13, 291 Mont. 359, ¶¶ 11-13, 968 P.2d 716, ¶¶ 11-13.  Widdicombe is only contesting the first two determinations.

*Was there a particularized suspicion to stop Widdicombe's vehicle?*

¶9  The "reasonable grounds" requirement of § 61-8-403(4)(a)(i), MCA, is equivalent to "particularized suspicion." *Bush,* ¶ 10.  This same standard is used to justify an investigative stop.

In order to obtain or verify an account of the person's presence or conduct or to determine whether to arrest the person, a peace officer may stop

4

any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense.

Section 46-5-401(1), MCA.

¶10     Widdicombe claims that merely driving on and crossing slightly over the yellow center line is not a driving offense.  Moreover, Widdicombe argues the present situation is factually and legally controlled by our  precedent in *State v. Lafferty,* 1998 MT 247, 291 Mont. 157, 967 P.2d 363, where we determined that driving close to the fog line and crossing the fog line did not give rise to a particularized suspicion.  The situation here is similar to *Lafferty* in that both involve the highway patrol stopping a pickup truck for a suspected DUI. *Lafferty* involved a criminal charge of DUI, in which the prosecution failed to prove facts supporting a particularized suspicion to stop the defendant's pickup truck.  *Lafferty,* ¶ 18. Widdicombe's case, however, is a civil action to reinstate his license.  In such a case, it is the petitioner who bears the burden of proof.

¶11     In *Lafferty*, a dispatcher relayed to a highway patrolman the description of a supposed drunk driver from an anonymous caller.  *Lafferty,* ¶ 3.  The patrolman encountered a similar vehicle driving on the interstate highway in the far right lane.  *Lafferty,* ¶ 4.  After observing the vehicle cross the fog line twice and drive on it once, the patrolman stopped the vehicle. *Lafferty,* ¶ 4.  At issue was whether Lafferty's driving was a violation of § 61-8-328, MCA (1995), which provided that when a "roadway has been divided into two or more clearly marked lanes for traffic . . . [a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that

5

such movement can be made with safety." We concluded that Lafferty's driving did not violate the statute in question because "the statute relates to moving from a marked traffic lane to another marked traffic lane." *Lafferty,* ¶ 14. We noted that Lafferty did not move between the two eastbound marked traffic lanes, but "merely crossed onto and barely over the fog line on the far right side of the right traffic lane in which she was traveling." *Lafferty*, ¶ 14. Similarly, particularized suspicion was lacking when an eastbound driver "drifted" a foot into the other eastbound lane and then drifted across to touch the fog line on the other side of his lane. *Morris v. State,* 2001 MT 13, ¶ 10, 304 Mont. 114, ¶ 10, 18 P.3d 1003, ¶ 10.

¶12     Widdicombe claims that we are similarly bound to determine that merely driving on the yellow center line is not a traffic violation. Crossing the yellow center line, however, implicates a different statute than that at issue in *Lafferty.* Section 61-8-321(1), MCA (2001), provides that "[u]pon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway . . . ." The statute then lists exceptions, none of which are applicable here. In contrast to the "practicality" standard at issue in *Lafferty* (§ 61-8-328, MCA (1995)), the word "shall" in § 61-8-321(1), MCA (2001), is a mandatory term, prohibiting drivers from carelessly crossing the yellow center line and subjecting themselves and other drivers on the road to the possibility of a head-on collision. The yellow center line divides the right side of the road from the left side. Although a driver might drive close to the line, actually driving upon the yellow center line means the driver is no longer on the right side, but is driving in the center of the road. We have previously said that "[i]n itself,

6

the driving of a vehicle into the wrong traffic lane may be sufficient to constitute a traffic violation under Section 61-8-321, MCA." *Matter of Suspension of Driver's License of Blake* (1986), 220 Mont. 27, 31, 712 P.2d 1338, 1341.

¶13   Here, Widdicombe was leaving town on a two lane highway, and although traffic was light, there was oncoming traffic. Widdicombe was observed crossing the center line by at least a tire's width, placing a portion of his vehicle in the wrong traffic lane, thereby creating an obvious danger to on-coming traffic. Driving a vehicle across the yellow center line, absent one of the statutory exceptions, constitutes a traffic violation under § 61-8-321, MCA.

¶14   We also note that the testimony of the officer here differed from the officer's testimony in *Lafferty*. There, the highway patrolman testified that although Lafferty's driving was "not normal traffic procedure," he would not have stopped her vehicle but for the anonymous phone call. *Lafferty*, ¶ 15. Here, Officer Moody testified that he and Officer Waddell waited until Widdicombe crossed the line three times before effecting a stop. Widdicombe only testified that he did not think he had crossed the center line. Although he was not the arresting officer, Officer Moody was present in the patrol car and personally witnessed Widdicombe's driving. The videotape corroborates Officer Moody's testimony. On this evidence, Widdicombe failed to meet his burden of proving lack of particularized suspicion to make the initial stop of his vehicle.

*Was Widdicombe lawfully arrested?*

¶15   We next address whether Widdicombe was lawfully arrested in compliance with statutory and constitutional requirements, including probable cause. Section 46-6-311,

7

MCA. Probable cause requires a belief, reasonable under the facts and circumstances within an officer's personal knowledge, that an offense has been committed. *Bush*, ¶ 15.

¶16 After stopping Widdicombe's vehicle, Officer Waddell immediately noted the odor of alcohol. Widdicombe walked in a slow and deliberate manner back to the patrol car. His score on the HGN test indicated he was intoxicated, and he refused to take a PBT. After performing poorly in other field sobriety tests, he was arrested. Widdicombe now claims that the State failed to carry its burden of proof because Officer Moody failed to directly say that they had probable cause. It is not necessary for the actual arresting officer to testify to probable cause when another officer such as Moody witnessed and supervised the entire event and testified. Furthermore, as mentioned above, because Widdicombe was seeking reinstatement of his license, he bore the burden of proving that the officers did not have probable cause to arrest him.

¶17 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ JIM RICE