No. 03-700

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 150

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

JERRY WALTER BRANDER,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Third Judicial District,
                     In and For the County of Powell, Cause No. DC 2002-32,
                     Honorable Kurt D. Krueger, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Edmund D. Sheehy, Jr., Cannon and Sheehy, Helena, Montana

        For Respondent:

        Honorable Mike McGrath, Attorney General; Jennifer Anders, Assistant
        Attorney General, Helena, Montana

        Christopher G. Miller, County Attorney, Deer Lodge, Montana

              Submitted on Briefs:  March 16, 2004

                        Decided:  June 11, 2004

Filed:

                               Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 On the Powell County side of McDonald Pass, Jerry Brander was arrested for driving under the influence of alcohol or drugs. He was subsequently charged with felony driving under the influence of alcohol or drugs; misdemeanor habitual traffic offender operating a motor vehicle; and misdemeanor careless driving. After entering a plea of not guilty, Brander moved the court to suppress evidence and to dismiss the charges. The District Court denied his motions. Pursuant to a plea agreement reserving his right to appeal the denial of the motions to suppress and dismiss, Brander changed his plea to guilty and was sentenced. Brander now appeals, claiming the District Court should have suppressed the evidence and dismissed the charges. We affirm.

¶2 Deputy Sheriff Roselles was in the Elliston area when he received a report from dispatch that it had received an anonymous tip of a drunk driver. The caller stated that Jerry Brander was driving drunk eastbound on his way to Stoner's (a bar on Highway 12) in a brown Isuzu pickup with a topper and license plate number 28T-142. Finding no such vehicle at Stoner's, Roselles continued east towards McDonald Pass. He soon encountered a dirty dark blue Isuzu pickup with a topper and license plate 28T-412, which was close to the description given by the anonymous caller. Roselles called dispatch to get an identification of the registered owner. He observed that the vehicle was moving slowly, at a rate of 30 to 35 mph in a 70 mph zone, and was meandering in its lane, swerving back and forth next to the fog line. It crossed the fog line, and swerved again, partially crossing into the other eastbound lane without signaling and then back into the right hand lane. As the

2

vehicle was approaching the county line at the top of the pass, Roselles initiated a vehicle stop. Approaching the truck, he could see a number of cases of beer in the back end, both opened and unopened. Roselles ordered Brander out of the truck, and it soon became apparent from his odor and behavior that Brander was intoxicated. Brander failed several field sobriety tests and a Portable Breath Test (PBT) revealed a Blood Alcohol Content (BAC) of 0.288. He was then arrested.

¶3     We review a district court's denial of a motion to suppress evidence to determine whether the court's finding that the officer had particularized suspicion to justify the investigative stop is clearly erroneous. *State v. Nelson*, 2004 MT 13, ¶ 5, 319 Mont. 250, ¶ 5, 84 P.3d 25, ¶ 5.

¶4     The "reasonable grounds" standard for making an investigative stop under § 61-8-403(4)(a)(i), MCA, is the effective equivalent of the "particularized suspicion" test for an investigative stop under § 46-5-401, MCA. *Grindeland v. State,* 2001 MT 196, ¶ 10, 306 Mont. 262, ¶ 10, 32 P.3d 767, ¶ 10.

¶5     Brander argues that Deputy Roselles could not justify an investigative stop on the basis of the information provided by the anonymous caller because the information did not meet the three-part test established in *State v. Pratt* (1997), 286 Mont. 156, 951 P.2d 37. The *Pratt* test is used to evaluate the existence of a particularized suspicion to justify an investigative stop pursuant to a tip. The first factor is whether the informant remains anonymous, or through identification, subjects herself to civil and criminal liability. The second factor is whether the report is based on personal observations. The third factor is

whether the officer's own observations corroborate the informant's information. Brander contends that the informant did not identify herself, that there is no evidence that she was relying on information based on her personal observations, and that Roselles did not find the vehicle in the location described in the tip. Brander's argument, however, assumes that Roselles' stop of Brander was based solely on the citizen tip with no independent observation of suspicious activity. Deputy Roselles' admission that he did not know whether or not the vehicle he was stopping was the vehicle from the tip illustrates the fact that he was not relying solely on the tip. Rather, in contrast to *Pratt*; *State v.Elison*, 2000 MT 288, 302 Mont. 228, 14 P.3d 456; and *State v. Roberts*, 1999 MT 59, 293 Mont. 476, 977 P.2d 974, where the stops were based upon the information in the tips without any independent observation of suspicious activity, Deputy Roselles followed Brander for several miles and was able to make independent observations giving rise to a particularized suspicion of driving under the influence.

¶6     Brander asserts that, according to *State v. Lafferty*, 1998 MT 247, 291 Mont. 157, 967 P.2d 363, it is not illegal to cross the fog line, or to meander within the lane, and that changing lanes is only illegal if done in an unsafe manner. However, while observation of a traffic offense naturally gives rise to a particularized suspicion, it is not necessary that an officer observe a moving violation to support a particularized suspicion of driving under the influence. In *State v. Gopher* (1981), 193 Mont. 189, 631 P.2d 293, we adopted the two-part test enunciated by the United States Supreme Court in *United States v. Cortez* (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621, to evaluate whether a police officer had a

particularized suspicion to make an investigative stop.  Under *Gopher*, the State has the burden of showing:

> (1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing or was a witness to criminal activity.

Thus the question is not whether any one of Brander's driving aberrations was itself "illegal" but rather, whether Deputy Roselles could point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.  *State v. Martinez*, 2003 MT 65, ¶ 21, 314 Mont. 434, ¶ 21, 67 P.3d 207, ¶ 21.

¶7     Deputy Roselles testified that he was not certain that the vehicle he was stopping was the one referred to by the anonymous caller, but that based on his training and experience as a peace officer and his personal observations of the vehicle moving very slow, meandering and crossing the fog line, he suspected the driver was under the influence.  The record supports the District Court's conclusion that Deputy Roselles had a particularized suspicion to effectuate a vehicle stop of Brander.

¶8     Relying on *Hulse v. State*, 1998 MT 108, 289 Mont. 1, 961 P.2d 75, Brander also claims that Deputy Roselles did not have authority to order Brander out of the vehicle and that all the subsequent field sobriety tests should be suppressed.  In *Hulse*, we stated that an officer could administer field sobriety tests based upon particularized suspicion rather than the more stringent standard of probable cause.  *Hulse*, ¶ 38.  Brander claims that, because Deputy Roselles did not smell the alcohol on his breath until after he was ordered out of his vehicle and was standing behind his pickup, Deputy Roselles did not have a particularized suspicion to warrant administration of field sobriety tests.  But in *Hulse*, we also noted that:

particularized suspicion for the initial stop may also serve as the necessary particularized suspicion for the administration of field sobriety tests, providing the basis for the initial stop was of the nature that would lead an officer to believe that the driver was intoxicated. In other words, if an individual is driving erratically–e.g., if he is driving all over the road, crossing the center line and the fog line, weaving in and out of traffic, or braking for green lights– such evidence would serve as particularized suspicion both for the officer to initially stop the driver and to administer field sobriety tests.

*Hulse*, ¶ 39.

¶9 Here, Brander's driving was sufficiently erratic to support Deputy Roselles' particularized suspicion that Brander was driving under the influence. Although Roselles did not notice the smell of alcohol emanating from Brander until after he and Brander walked to the back of his truck, Roselles already had formed a particularized suspicion, and he therefore had the authority to administer field sobriety tests. The order of the District Court is affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JIM REGNIER
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JIM RICE

6