DA 07-0539

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 422

LISA M. JESS,

        Petitioner and Appellant,

    v.

STATE OF MONTANA, ex rel.,
RECORDS AND DRIVER CONTROL

        Respondent and Appellee.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Stillwater, Cause No. DV 07-33
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Brad L. Arndorfer; Arndorfer Law Firm, P.C.; Billings, Montana

        For Appellee:

        Hon. Mike McGrath, Montana Attorney General; Jonathan M. Krauss,
Assistant Attorney General; Helena, Montana

        John I. Petak, III, Stillwater County Attorney; Columbus, Montana

Submitted on Briefs:  May 21, 2008

Decided:  December 16, 2008

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Lisa M. Jess (Jess) appeals from the order of the Twenty-Second Judicial District Court, denying her petition for reinstatement of her drivers' license, which was suspended pursuant to § 61-8-402(4), MCA. We affirm.

## Factual and Procedural Background

¶2 On the night of May 17, 2007, Deputy Smith followed Jess' vehicle as it traveled westbound on Highway 10 leaving Columbus, Montana. Smith noted that the vehicle was traveling 45 miles per hour (mph) in a 70 mph zone, and observed it touch or cross the highway fog line and the centerline a number of times. Smith stopped Jess' vehicle, and she was ultimately arrested for driving under the influence of alcohol. During the course of Smith's investigation, Jess refused to take a preliminary breath alcohol test, resulting in the suspension of her license.

¶3 Jess petitioned the District Court for reinstatement of her drivers' license pursuant to § 61-8-403, MCA, challenging two aspects of Deputy Smith's stop. She argued that Smith lacked particularized suspicion to make the stop, and that under § 7-32-303(5)(a), MCA, because he had not yet completed the basic training course at the Montana Law Enforcement Academy, he was ultimately without statutory authority to arrest her. The District Court denied Jess' petition, concluding that Deputy Smith had the authority to make the arrest, and that he had sufficient particularized suspicion to effectuate a traffic stop.

¶4 The court interpreted § 7-32-303(5)(a), MCA, as revoking the authority to arrest where a deputy fails to attend law enforcement academy training within 1 year of his

initial appointment. It disagreed with Jess' contention that the statute instead provided that Deputy Smith was without arrest authority until he completed law enforcement academy training, concluding that the statutory language did not support her interpretation. The District Court also concluded that Deputy Smith had sufficient experience to form a particularized suspicion of a potentially intoxicated driver. Finally, the court concluded that Deputy Smith's observation of Jess' vehicle touching the centerline, touching and crossing the fog line, and traveling well under the speed limit provided sufficient objective data to support a particularized suspicion that Jess was driving while under the influence of alcohol in violation of Montana law.

## Issues

¶5    We restate the dispositive issues on appeal:

¶6    1. Did the District Court err in concluding that Deputy Smith was statutorily authorized to arrest Jess?

¶7    2. Did Deputy Smith have sufficient experience and objective data to form a particularized suspicion that Jess was driving under the influence of alcohol?

## Standard of Review

¶8    When reviewing a District Court's ruling on a petition for reinstatement of a drivers' license, we determine whether the court's findings of fact were clearly erroneous, and whether its conclusions of law were incorrect. *Clark v. State ex rel. Driver Improvement Bureau*, 2005 MT 65, ¶ 6, 326 Mont. 278, ¶ 6, 109 P.3d 244, ¶ 6. In such cases, the petitioner bears the burden of proving that the State's action was improper.

3

*Widdicombe v. State ex rel. Lafond*, 2004 MT 49, ¶ 7, 320 Mont. 133, ¶ 7, 85 P.3d 1271, ¶ 7.

## Discussion

¶9     On appeal, Jess challenges the District Court's conclusion that Deputy Smith had the statutory authority to arrest her while unsupervised. The thrust of her argument is that he did not have the authority to operate as a peace officer without direct supervision until he completed law enforcement academy training. Jess cites the following statute in support of her argument, which states, in pertinent part:

> it is the duty of an appointing authority to cause each peace officer appointed under its authority to attend and successfully complete, *within 1 year of the initial appointment*, an appropriate peace officer basic course . . . . Any peace officer . . . who fails . . . to complete the basic course . . . forfeits the position, authority, and arrest powers accorded a peace officer in this state.

Section 7-32-303(5)(a), MCA (emphasis added). Jess' argument is at odds with the plain language of the statute, which is ultimately inapplicable to this case. It provides only that a peace officer forfeits their authority if they fail to complete the required basic course within one year of their date of appointment. Deputy Smith was appointed in September, 2006, and Jess was arrested in May, 2007. He was therefore not yet subject to the forfeiture provisions of the statute, and by necessary extension, retained his power to arrest Jess.

¶10    Jess also argues that Deputy Smith was a reserve officer, and thus under § 7-32-216, MCA, he was not authorized to serve as a peace officer without direct supervision. However, she fails to provide any support for her assertion that Smith was a reserve

4

officer. The undisputed record reflects that as of the date of Jess' stop and arrest, Smith was a deputy sheriff for Stillwater County. Under § 7-32-303(1), MCA, a deputy sheriff is a peace officer. Section 7-32-216, MCA, is thus also inapplicable to the instant case. At the time of Jess' arrest, Deputy Smith was a peace officer, not a reserve officer. Therefore, he was statutorily authorized to serve without direct supervision.

¶11 We turn now to Jess' contention that Deputy Smith lacked a particularized suspicion to stop her vehicle. The District Court's review of Jess' petition for reinstatement was confined to a determination of whether the arresting officer had reasonable grounds to believe the petitioner had been driving or was in actual physical control of a vehicle upon a way of the state open to the public while under the influence of drugs or alcohol. Section 61-8-403(4)(a)(i), MCA. For the purposes of the statute governing a petition for reinstatement of a drivers' license, the statutory standard of "reasonable grounds" is effectively equivalent to particularized suspicion. *Widdicombe*, ¶ 9.

¶12 When reviewing a petition for reinstatement of a drivers' license, we use the following two part test to determine whether a police officer had a particularized suspicion to make an investigative stop. *Clark*, ¶ 9. The state must show (1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing. *Clark*, ¶ 9; citing *State v. Brander*, 2004 MT 150, ¶ 6, 321 Mont. 484, ¶ 6, 92 P.3d 1173, ¶ 6. "Whether a particularized suspicion exists is a question of fact based on the totality of the circumstances surrounding the investigative stop." *State v. Thompson*, 2006 MT

5

274, ¶ 7, 334 Mont. 226, ¶ 7, 146 P.3d 756, ¶ 7. We noted in *Brander* that "[t]he question is not whether any one of Brander's driving aberrations was itself 'illegal' but rather, whether [the officer] could point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Brander*, ¶ 6.

¶13 We have addressed the issue of what type of objective data can be used to support a particularized suspicion of a potentially intoxicated driver in several factually similar cases. In *Brander*, we held that the deputy's testimony that he observed the vehicle moving very slowly and meandering and crossing the fog line was sufficient to uphold the District Court's conclusion that the deputy had a particularized suspicion to effectuate a traffic stop. *Brander*, ¶ 7. An officer's observation of a vehicle touching or crossing the centerline several times can also provide a particularized suspicion that a driver is potentially intoxicated. *See Widdicombe*, ¶ 14. Finally, we reiterate that "[i]t is not necessary that an officer observe a moving violation to support a particularized suspicion of driving under the influence." *Brander*, ¶ 6.

¶14 In this case, the District Court denied Jess' petition because it found that Deputy Smith had a particularized suspicion based upon his observations that Jess' vehicle was traveling at 45 mph in a 70 mph zone, her vehicle touched and crossed the fog line repeatedly, and touched the centerline on one occasion. Under the cases discussed above, these observations, taken together, represent sufficient objective data to support a particularized suspicion that Jess was driving under the influence in violation of Montana law.

6

¶15    Jess argues that under our precedent, an officer's stop cannot be based merely upon a vehicle driving slowly, or crossing the fog line. She cites *State v. Lee*, 282 Mont. 391, 938 P.2d 637 (1997); and *State v. Lafferty*, 1998 MT 247, 291 Mont. 157, 967 P.2d 363, for those respective propositions. This argument fails to give effect to the standard by which a particularized suspicion is formed and reviewed by this Court. Particularized suspicion is based upon the totality of the circumstances surrounding the stop. *Thompson*, ¶ 7. Jess' attempt to isolate the officer's individual observations from the totality of the circumstances surrounding her arrest is unpersuasive. In sum, Jess has failed to meet her burden of proving that under the totality of the circumstances, Deputy Smith lacked sufficient objective data to form a particularized suspicion that she was driving under the influence.

¶16    Finally, Jess argues that Deputy Smith had insufficient experience to form particularized suspicion of a potentially intoxicated driver. She again cites *State v. Lafferty* in support of her argument. (1998 MT 247, 291 Mont. 157, 967 P.2d 363.) *Lafferty* did not address, even tangentially, the question of the officer's experience or training as it applied to forming a particularized suspicion of a potentially intoxicated driver. Rather, *Lafferty* examined the sufficiency of an officer's corroborating observations where the officer receives an anonymous informant tip of a potentially intoxicated driver. It is not our role to conduct legal research on the appellant's behalf, or to guess at her precise position. *State v. St. Germain*, 2007 MT 28, ¶ 41, n. 1, 336 Mont. 17, ¶ 41, n. 1, 153 P.3d 591, ¶ 41, n. 1. Other than her misplaced reliance on *Lafferty*, Jess provides no authority in support of her position that Deputy Smith was not

sufficiently experienced to form a particularized suspicion of an intoxicated driver. While we are not obligated to undertake any further review, we agree with the District Court that Deputy Smith had sufficient experience to testify as to his particularized suspicion that Jess was driving while impaired. The uncontroverted record shows that Smith attended 280 hours of reserve training, 24 hours of DUI training with the Montana Highway Patrol, and had made a number of DUI arrests both with and without the assistance of a more experienced officer prior to his stop of Jess. In sum, he was sufficiently experienced to form a particularized suspicion in this case.

## Conclusion

¶17 We conclude that Deputy Smith was statutorily authorized to arrest Jess, and that he had sufficient experience and objective data to support a particularized suspicion that Jess was potentially intoxicated. We therefore affirm the District Court's denial of Jess' petition for reinstatement of her drivers' license.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS