DA 10-0176

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 232

JEFFERY ALLEN WEER,

        Petitioner and Appellant,

    v.

STATE OF MONTANA,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
                      In and For the County of Missoula, Cause No. DV 10-122
                      Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Jeffrey T. Renz, Clinical Professor of Law, University of Montana School
                of Law, Missoula, Montana

        For Appellee:

                Steve Bullock, Montana Attorney General, C. Mark Fowler, Assistant
                Attorney General, Katie Guffin, Legal Intern, Helena, Montana

                Fred Van Valkenburg, Missoula County Attorney, Missoula, Montana

                              Submitted on Briefs:  October 6, 2010

                                      Decided:  November 3, 2010

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Jeffery Allen Weer (Weer) appeals from an order of the Fourth Judicial District Court, Missoula County, denying his petition for reinstatement of his driver's license and driving privileges. We affirm.

## ISSUE

¶2 A restatement of the dispositive issue on appeal is whether the District Court erred when it denied Weer's petition for reinstatement of his driver's license.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On January 16, 2010, Montana Highway Patrol Trooper Richard Salois (Salois) was patrolling Highway 200 in Bonner, Montana, when he noticed Weer's pickup truck traveling towards him at approximately 12:44 a.m. Once Weer drove past Salois, Salois made a u-turn, drove up behind Weer, and began to follow him. Within moments of catching up to Weer, Salois observed Weer's vehicle swerve twice towards the double-yellow centerline, and then, on the third instance, Weer drove onto the centerline. Salois activated his overhead lights, initiating an investigative stop. However, Weer continued driving until Salois activated his emergency siren, at which point Weer pulled over to the shoulder of the road and stopped his vehicle.

¶4 During the investigatory stop, Weer refused to submit to Salois' request for a preliminary breathalyzer test (PBT). Weer was cited for driving under the influence of alcohol (DUI) in violation of § 61-8-401(1)(a), MCA, and failing to drive to the right of

3

the roadway in violation of § 61-8-321(1), MCA. Because Weer refused to provide a PBT breath sample, his driver's license and driving privileges were suspended.

¶5     On February 2, 2010, Weer petitioned the District Court to reinstate his driver's license on the grounds that Salois lacked particularized suspicion to stop Weer. On February 12, 2010, the Fourth Judicial District Court conducted an evidentiary hearing on Weer's petition. During the hearing, the court heard testimony from Salois and watched the video recording of Weer's driving, taken by Salois' on-board camera. This video and a copy of the DUI citation issue to Weer were admitted into evidence at the hearing.

¶6     Based on Salois' testimony, the videotape, and the parties' post-hearing briefs, the District Court denied Weer's petition for reinstatement of his driver's license and driving privileges, concluding Salois had sufficient particularized suspicion to initiate an investigative stop and conduct a DUI investigation. Weer appeals.

## STANDARD OF REVIEW

¶7     We review a district court's ruling on a petition for reinstatement of a driver's license and driving privileges to determine whether the court's findings of fact were clearly erroneous and its conclusion of law correct. *Jess v. State ex rel. Rec. & Driver Cont.*, 2008 MT 422, ¶ 8, 347 Mont. 381, 198 P.3d 306. A finding is clearly erroneous if it is not supported by substantial credible evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been committed. *LeFeber v. Johnson*, 2009 MT 188, ¶ 18, 351 Mont. 75, 209 P.3d 254.

## DISCUSSION

4

¶8    *Did the District Court err when it denied Weer's petition for reinstatement of his driver's license and driving privileges?*

¶9    In a hearing for reinstatement of a petitioner's driver's license and driving privileges, the issues to be determined by a district court are limited to:

(1) whether the arresting officer possessed a particularized suspicion that the individual in question had been driving or was in actual physical control of a vehicle upon ways of this state while under the influence of alcohol or drugs;

(2) whether the petitioner was lawfully under arrest, including the existence of probable cause; and

(3) whether the petitioner in fact declined to submit to a breath test.

*Widdicombe v. State ex rel. Lafond*, 2004 MT 49, ¶ 8, 320 Mont. 133, 85 P.3d 1271 (citing *Bush v. Montana DOJ, Motor Vehicle Div.*, 1998 MT 270, ¶¶ 11-13, 291 Mont. 359, 968 P.2d 716). Weer challenges only the first issue, whether Salois had particularized suspicion to make the initial traffic stop.

¶10    To justify an investigatory stop of a motor vehicle, the State has the burden to show: (1) objective data from which an experienced officer can make certain inferences; and (2) a resulting particularized suspicion that the occupant of the motor vehicle is or has been engaged in wrongdoing or was a witness to criminal activity. *See State v. Gilder*, 1999 MT 207, ¶ 10, 295 Mont. 483, 985 P.2d 147. Whether particularized suspicion exists is a question of fact that depends on the totality of the circumstances including, but not limited to, "the quantity, or content, and quality, or degree of reliability, of the information available to the officer." *Id.* at ¶ 11 (quoting *State v. Pratt*, 286 Mont. 156, 161, 951 P.2d 37, 40 (1997)); *see also State v. Waite*, 2006 MT 216, ¶ 11,

333 Mont. 365, 143 P.3d 116. As we have previously noted, "the question is not whether any one of [the petitioner's] driving aberrations was itself 'illegal' but rather, whether [the officer] could point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *State v. Brander*, 2004 MT 150, ¶ 6, 321 Mont. 484, 92 P.3d 1173 (citation omitted). In looking to the totality of the circumstances, some of the factors we have previously considered are the time of day, the location of the stop, and the petitioner's driving behavior. *See Jess*, ¶¶ 14-15; *Widdicombe*, ¶¶ 13-14; *Morris v. State*, 2001 MT 13, ¶¶ 9-10, 304 Mont. 114, 18 P.3d 1003.

¶11 Weer argues at length that he did not commit a traffic offense when he drove onto the double-yellow centerline and that a reasonable officer would not have stopped him for driving on the centerline. Weer also makes much of Salois' testimony that, while he originally cited Weer for violating § 61-8-321(1), MCA, it was not the most accurate citation he could have written to identify that driving onto the centerline is a traffic violation. The State argues it is irrelevant whether Weer violated a specific traffic law because, regardless of whether Weer committed a specific traffic violation when he drove onto the centerline, Salois had particularized suspicion to stop Weer. The District Court concluded, and we agree, that Weer's argument is inapposite because "we do not require an investigating officer to identify a particular statutory violation and/or cite a defendant for a moving violation to establish a particularized suspicion." *State v. Schulke*, 2005 MT 77, ¶ 18, 326 Mont. 390, 109 P.3d 744. Moreover, we have previously held that, based on the totality of the circumstances, an investigating officer may still form a

particularized suspicion sufficient to justify an investigatory stop, even if the defendant does not violate a specific traffic law. *Id.* at ¶ 17. For these reasons, it is unnecessary for us to address whether or not driving on the double-yellow centerline is a traffic violation; the dispositive issue is whether or not Salois had sufficient facts to form a particularized suspicion to stop Weer's vehicle.

¶12 Next, Weer claims that his driving behavior—swerving towards, and then driving onto, the centerline—falls within a class of driving behavior this Court has deemed insufficient to justify an investigative stop of a motor vehicle. Weer argues that our precedent in *State v. Lafferty,* 1998 MT 247, 291 Mont. 157, 967 P.2d 363 and *Morris* is factually and legally controlling in this case. However, *Lafferty* and *Morris* are distinguishable from Weer's present situation.

¶13 As an initial matter, *Lafferty* is procedurally distinguishable from this case. Lafferty argued the district court improperly denied her motion to suppress evidence during her criminal case because the State failed to prove facts necessary to show particularized suspicion to stop her vehicle. *Lafferty*, ¶ 1. Weer's case is a civil action to reinstate his driver's license and driving privileges. Suspension or revocation of a driver's license is presumed to be correct; the petitioner, not the State, bears the burden of proving that the State's action was improper. *Kleinsasser v. State*, 2002 MT 36, ¶ 10, 308 Mont. 325, 42 P.3d 801.

¶14 *Lafferty* is also factually distinguishable from the instant case. There, Montana Highway Patrol received an anonymous phone call reporting a potential drunk driver heading eastbound on Interstate 90 between Park City and Billings, Montana, at 4:30 in

the afternoon. *Lafferty*, ¶ 3. When the patrolman encountered a vehicle similar to the one described by the caller, he followed the vehicle, which was driven by Lafferty, for approximately one mile. *Id.* at ¶ 4. During that time, the patrolman saw Lafferty's vehicle cross the fog line twice, and drive onto the fog line once. *Id.* The patrolman initiated an investigatory stop of the vehicle. *Id.*

¶15 Lafferty later testified that she had seen the patrolman in her rearview and side mirrors as he came up quickly behind her, and that she had kept watch of him in her mirrors as he followed her. *Id.* at ¶ 5. She further testified that it was her normal practice to drive close to the fog line, and had been taught to do so in defensive driving classes. *Id.* The patrolman testified that, while he found Lafferty's driving was "not normal traffic procedure," he would not have stopped her but for the anonymous phone call. *Id.* at ¶ 4. The district court concluded "the law requires one to stay within one's driving lane until it is ascertained that one can leave one's lane safely," and because Lafferty had left her lane without ascertaining whether it was safe to do so, the patrolman's stop was justified and her motion to suppress was denied. *Id.* at ¶ 7. We reversed, holding that under the totality of the circumstances, sufficient particularized suspicion did not exist to stop Lafferty. *Id.* at ¶ 18. The objective factors we considered in reaching this decision included that "Lafferty was stopped at approximately 4:30 in the afternoon on an interstate highway; she did not swerve into the wrong traffic lane, but merely crossed the fog line as she observed [the patrolman's] patrol car come up behind her at a high rate of speed and follow her." *Id.* at 17. Different factors exist here.

¶16    *Morris* is also distinguishable from the instant case.  In that case, a police officer observed Morris' vehicle drift across the painted line separating the two eastbound lanes of traffic and then drift back to touch the fog line once or twice.  *Morris*, ¶ 2.  Morris was stopped at 1:50 a.m. on Tenth Avenue South, a four-lane highway, in Great Falls, Montana.  *Id.*  When Morris refused to provide a breath sample his driver's license was suspended.  *Id.*

¶17    During the hearing in district court to reinstate his driver's license and driving privileges, Morris testified the road was rutted and that it was his normal practice to avoid potholes on the road.  *Id.* at ¶ 10.  The police officer described Morris' driving as "drifting" and did not cite him for any other driving offenses, other than the DUI at the time of the stop.  *Id*.  Based on the evidence and testimony presented, the district court found there was no particularized suspicion for the traffic stop.  *Id.* at ¶ 3.  We affirmed the district court.  *Id.* at ¶ 12.

¶18    We uphold a district court's findings "when there is substantial evidence to support them even when there is also evidence supporting contrary findings."  *Koeppen v. Bolich*, 2003 MT 313, ¶ 47, 318 Mont. 240, 79 P.3d 1100 (quoting *Rafanelli v. Dale*, 278 Mont. 28, 33, 924 P.2d 242, 245 (1996)).  On appeal, we will not disturb a district court's determination of witness credibility at an evidentiary hearing because this determination rests with the trier of fact.  *Hendricks v. State*, 2006 MT 22, ¶ 16, 331 Mont. 47, 128 P.3d 1017 (citing *State v. Boucher*, 1999 MT 102, ¶ 19, 294 Mont. 296, 980 P.2d 1058).

¶19    In this case, Weer was driving on a straight, flat stretch of a two-lane highway at approximately 12:44 a.m. on a Saturday morning.  Within a very short distance, Salois

observed Weer twice swerve towards, and once drive onto, the double-yellow centerline separating his lane of travel from that of oncoming vehicles. Unlike Lafferty, Weer did not testify he saw Salois drive up behind him, and contrary to Morris, Weer did not testify the road was rutted. In fact, Weer proffered no explanation of his driving behavior on the record before this Court. Furthermore, unlike the patrolman in *Lafferty*, Salois testified at the evidentiary hearing that a driver weaving in his or her own lane on a straight road is an indicator that the driver is potentially impaired or distracted, or there is a mechanical problem with the vehicle. Salois also testified that there is a greater probability of impaired drivers on the road during the early morning hours on a Saturday. Finally, Salois testified he stopped Weer because, after seeing Weer weave twice in his own lane and eventually drive onto the centerline, he was concerned Weer would collide with another vehicle and potentially hurt himself or somebody else.

¶20 The video from Salois' on-board camera corroborates his testimony regarding Weer's driving behavior, and Salois testified to specific, articulable facts as to why he stopped Weer. The District Court found Salois' testimony credible. Given the totality of these circumstances, the District Court concluded that Weer failed to show Salois lacked particularized suspicion to make the initial stop of his vehicle and denied Weer's petition for reinstatement of his driver's license and driving privileges. We conclude that these facts, taken together, are sufficient to establish particularized suspicion to initiate an investigative stop. Therefore, we conclude the District Court's findings are supported by substantial evidence.

10

¶21 Weer's second argument is that the District Court abused its discretion when it relied on a non-citable decision of this Court in its order. The District Court concluded that Salois had particularized suspicion to stop Weer, citing *Ditton v. DOJ Motor Vehicle Div.*, 2008 MT 256N. The State contends the District Court's mention of *Ditton* was *dictum*. We conclude that the District Court's passing reference to *Ditton* does not render its decision reversible. We take this opportunity, however, to remind district courts and parties that memorandum opinions are unpublished and, pursuant to Section I, 3(c) of our Internal Operating Rules, shall not be relied on as authority.

## CONCLUSION

¶22 For the foregoing reasons, we conclude the District Court's finding that Salois had sufficient facts to form a particularized suspicion and legally stop Weer was not erroneous, and the District Court's conclusions of law were correct. We therefore affirm the District Court's denial of Weer's petition for reinstatement of his driver's license and driving privileges.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS

11