FILED

09/21/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0079

DA 20-0079

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 242N

STATE OF MONTANA,

        Plaintiff and Appellee,

    v.

CODY R. SACKS,

        Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Twenty-First Judicial District, In and For the County of Ravalli, Cause No. DC 19-47 Honorable Jennifer B. Lint, Presiding Judge |

COUNSEL OF RECORD:

        For Appellant:

            Peter F. Lacny, Datsopoulos, MacDonald & Lind, P.C., Missoula, Montana

        For Appellee:

            Austin Knudsen, Montana Attorney General, Damon Martin, Assistant Attorney General, Helena, Montana

            William E. Fulbright, Ravalli County Attorney, William Lower, Deputy County Attorney, Hamilton, Montana

Submitted on Briefs: August 18, 2021

Decided: September 21, 2021

Filed:

_____
               Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Cody R. Sacks appeals from a December 24, 2019 judgment of the Twenty-First Judicial District Court, Ravalli County, following his guilty plea to aggravated DUI and from the court's August 29, 2019 opinion and order denying his motion to suppress. We affirm.

¶3    On September 2, 2018, at around 11:15 p.m., Ravalli County Sheriff's Deputy Jason Liechty observed Sacks leaving a bar located on U.S. Highway 93 in Victor, Montana. Liechty observed Sacks stumbling and tripping on his way to his vehicle. Liechty then followed Sacks as he drove north on Highway 93. After pulling into the left lane to read Sacks's license plate, Liechty observed Sacks signal to turn left. Dispatch informed Liechty Sacks did not have valid insurance.

¶4    Deputy Liechty pulled Sacks over after the turn. Liechty noted Sacks's difficulty opening his electric window, red and bloodshot eyes, and the strong odor of alcohol. Liechty informed Sacks the reason for the stop was driving without insurance. When Liechty questioned Sacks about where he was going and where he had come from, Sacks informed Liechty he was headed home from Cowboy Troy's bar. The subsequent DUI

2

investigation included a Standardized Field Sobriety Test during which Sacks demonstrated multiple indicators of impairment and a BrAC of 0.298.

¶5 Sacks was arrested and charged with aggravated DUI under § 61-8-465, MCA, and for failing to carry valid insurance under § 61-6-301, MCA.

¶6 On February 14, 2019, Sacks filed a motion to suppress and to dismiss the case against him in Justice Court. Sacks claimed the evidence was obtained during an illegal seizure in violation of his Fourth and Fourteenth Amendment rights and should be excluded. Sacks disputed Deputy Liechty's bases for particularized suspicion for the stop, claiming Liechty's sole basis was the report of no insurance obtained from the Montana Insurance Verification System (MTIVS). In his motion before the Justice Court, Sacks argued the stop was illegal because the MTIVS system is inherently unreliable, and Sacks was able to prove he had valid insurance.

¶7 On March 12, 2019, the Justice Court issued an order denying Sacks's motion to suppress and dismiss. The Justice Court found Deputy Liechty had probable cause for the stop, that Sacks could have corrected the error regarding his insurance coverage by carrying a valid insurance card in his vehicle, and concluded the court was unable to verify Sacks's insurance coverage on the exhibits submitted due to discrepancies.

¶8 On March 22, 2019, the Justice Court held a bench trial. The court found Sacks guilty of aggravated DUI and not guilty of driving without insurance. Deputy Liechty testified at trial, and the Justice Court noted Sacks was pulled over after Liechty observed him "staggering to [his] vehicle" and then driving. The State stipulated to Sacks's declaration of insurance.

3

¶9     On March 22, 2019, Sacks filed a notice of appeal and request to stay sentencing. The matter was transferred to the District Court.

¶10    On April 22, 2019, Sacks filed a motion to suppress, again arguing the traffic stop was illegal as its sole basis was the report of no insurance by the MTIVS system. In support of his motion, Sacks cited § 61-6-309(3), MCA, which prohibits law enforcement from using the insurance verification system to stop a driver without reasonable cause for another traffic violation.

¶11    On August 23, 2019, the District Court held an evidentiary hearing on the motion to suppress. The District Court reviewed the body and dash cam videos submitted into evidence by Sacks and heard testimony from Deputy Liechty and an expert witness called by Sacks. Sacks's expert witness, Richard Hader, was a retired state trooper with 21 years of law enforcement experience. Hader testified he would have acted similarly to Liechty given identical circumstances, though he stated he would have informed the driver of the additional reasons for the stop. The District Court found both Liechty's and Hader's testimony credible. The District Court also confirmed Liechty's body cam video showed Liechty stated lack of insurance as the reason for the stop.

¶12    In its August 29, 2019 opinion and order denying Sacks's motion, the District Court held Deputy Liechty had reasonable cause to believe Sacks was committing the offense of DUI and that Liechty did not conduct the stop in violation of § 61-6-309(3), MCA. The District Court noted the only reason for the stop Liechty stated to Sacks was Sacks's lack of insurance. However, the court held there was no legal requirement for Liechty to inform Sacks of every reason for the stop and that Liechty had already formed particularized

4

suspicion Sacks was driving while intoxicated before he received the report about Sacks's insurance.

¶13 On November 7, 2019, Sacks entered a recommended sentence plea agreement upon which he pleaded guilty to the charge of aggravated DUI. Sacks reserved the right to appeal the District Court's decision on his motion to suppress and dismiss.

¶14 On December 24, 2019, the District Court accepted Sacks's guilty plea and entered a judgment convicting Sacks of aggravated DUI.

¶15 On appeal, Sacks argues the District Court erred in denying his motion to suppress because its findings of particularized suspicion are unsupported by evidence in the record. Sacks disputes the credibility of Liechty's testimony and claims the District Court's findings are based on Liechty's "post hoc rationalizations." Sacks argues the video evidence supports his claim that Liechty's sole basis for the stop was the MTIVS report of no insurance, thereby making the stop illegal. As a result, Sacks maintains all evidence from the subsequent DUI investigation should be excluded.

¶16 We have previously articulated the applicable standards of review as follows:

> We review a lower court's denial of a motion to suppress to determine whether the court's findings are clearly erroneous and whether those findings were applied correctly as a matter of law. A lower court's finding that particularized suspicion exists is a question of fact which we review for clear error. A finding is clearly erroneous if it is not supported by substantial evidence, if the lower court has misapprehended the effect of the evidence, or if our review of the record leaves us with the firm conviction that a mistake has been made.

*City of Missoula v. Metz*, 2019 MT 264, ¶ 12, 397 Mont. 467, 451 P.3d 530 (internal citations omitted).

5

¶17     Individuals are protected from unreasonable searches and seizures by both the United States Constitution and the Montana Constitution.  U.S. Const. amend. IV; Mont. Const. art. II, § 11.  "These protections apply to investigative stops of vehicles." *State v. Cooper*, 2010 MT 11, ¶ 7, 355 Mont. 80, 224 P.3d 636 (citing *State v. Gopher*, 193 Mont. 189, 194, 631 P.2d 293, 296 (1981)).  "To justify a traffic stop, law enforcement must have a particularized suspicion that the occupant of the vehicle is committing, has committed, or will commit an offense." *State v. Reeves*, 2019 MT 151, ¶ 7, 396 Mont. 230, 444 P.3d 394 (citing § 46-5-401(1), MCA); *see also State v. Pratt*, 286 Mont. 156, 161, 951 P.2d 37, 40 (1997).

¶18     "[F]or a peace officer to have particularized suspicion or reasonable grounds for an investigatory stop, the peace officer must be possessed of: (1) objective data and articulable facts from which he or she can make certain reasonable inferences; and (2) a resulting suspicion that the person to be stopped has committed, is committing, or is about to commit an offense." *Brown v. State*, 2009 MT 64, ¶ 20, 349 Mont. 408, 203 P.3d 842.

¶19     Whether particularized suspicion exists is a question of fact that depends on the totality of the circumstances.  *Weer v. State*, 2010 MT 232, ¶ 10, 358 Mont. 130, 244 P.3d 311 (citing *State v. Gilder*, 1999 MT 207, ¶ 11, 295 Mont. 483, 985 P.2d 147).  Objective data must give rise to a resulting suspicion an offense has been, is being, or is about to be committed.  *State v. Reynolds*, 272 Mont. 46, 51, 899 P.2d 540, 543 (1995).  The question is not whether any one of a driver's behaviors was itself illegal, but whether the officer "could point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *State v. Brander*, 2004 MT 150, ¶ 6,

6

321 Mont. 484, 92 P.3d 1173. Some of the factors this Court has previously considered under totality of the circumstances are the time of day, the location of the stop, and the petitioner's driving behavior. *Weer*, ¶ 10 (citing *Jess v. State ex rel. Records & Driver Control*, 2008 MT 422, ¶¶ 14-15, 347 Mont. 381, 198 P.3d 306; *Widdicombe v. State ex rel. Lafond*, 2004 MT 49, ¶¶ 13-14, 320 Mont. 133, 85 P.3d 1271; *Morris v. State*, 2001 MT 13, ¶¶ 9-10, 304 Mont. 114, 18 P.3d 1003).

¶20   The District Court found Deputy Liechty's observations of Sacks leaving a bar, the time of night, and Sacks's stumbling behavior on his way to his car gave rise to sufficient particularized suspicion that Sacks was driving under the influence. The court held that under the totality of the circumstances Liechty could reasonably infer Sacks was committing the offense of DUI.

¶21   Sacks argues Deputy Liechty's credibility is suspect because his testimony at the suppression hearing identified additional reasons for his particularized suspicion beyond those that appear on the submitted videos or in his offense report. This is similar to *Cooper*, where the defendant argued evidence could not be considered if it did not appear in the officer's report. *Cooper*, ¶ 10. However, Liechty cited Sacks's stumbling behavior coming out of the bar in his offense report and in his testimony to both the Justice Court and District Court. When questioned in District Court about his reasonable suspicion upon observing Sacks then enter his vehicle and drive away, Liechty stated he "could [have] made a stop there."

¶22   Like the defendant in *Cooper*, Sacks also argues Liechty's testimony is suspect because he did not stop Sacks sooner. However, Sacks's own expert testified he would

7

have proceeded as Liechty did in identical circumstances. Further, Liechty testified he didn't believe he had time to get to Sacks in the parking lot. Though Liechty also testified he waited to stop Sacks because he wanted to give Sacks the benefit of the doubt and to observe additional driving behavior to be sure Sacks was an impaired driver, a peace officer need not be certain an offense has been committed in order to justify an investigatory stop. *City of Missoula v. Sharp*, 2015 MT 289, ¶ 8, 381 Mont. 225, 358 P.3d 204. "An officer in the field [also] need not consider every possible innocent explanation . . . before concluding that particularized suspicion exists." *State v. Flynn*, 2011 MT 48, ¶ 11, 359 Mont. 376, 251 P.3d 143 (citing *State v. Clark*, 2009 MT 327, ¶ 13, 353 Mont. 1, 218 P.3d 483).

¶23 Liechty's observations up to and including Sacks's getting into and driving his vehicle out of the bar parking lot were sufficient to support his particularized suspicion justifying an investigatory stop. That he did not stop Sacks immediately upon reaching a particularized suspicion does not undermine his bases for the investigatory stop.

¶24 The District Court did not err. The District Court held Liechty had the requirements for particularized suspicion to justify an investigatory stop. The District Court did not misapprehend the effect of the evidence and is correct in its application of the law.

¶25 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's findings of fact were not clearly erroneous nor suggestive of mistake, it did not misapprehend the evidence, and its interpretation and application of the law were correct.

¶26    Affirmed.


                                                /S/ MIKE McGRATH


We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE