DA 08-0279

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 57

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

MICHAEL H. DITTON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                   In and For the County of Gallatin, Cause No. DC 2007-58A
                   Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Michael H. Ditton, (Self-Represented), Bozeman, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General, C. Mark Fowler,
          Assistant Attorney General, Helena, Montana

          Marty Lambert, Gallatin County Attorney, Todd Whipple, Deputy County
          Attorney, Bozeman, Montana

                       Submitted on Briefs:  February 4, 2009

                                  Decided:  February 24, 2009

Filed:

               _____
                            Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 On November 5, 2007, Michael H. Ditton (Ditton) was convicted of driving under the influence (DUI) in the Municipal Court of the City of Bozeman, Montana. Ditton subsequently appealed his DUI conviction to the Eighteenth Judicial District Court, Gallatin County. On April 9, 2008, the District Court affirmed Ditton's conviction and Ditton now appeals the District Court's decision. We affirm Ditton's conviction, but remand Ditton's sentence for further proceedings consistent with this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 At approximately 11:30 p.m. on August 19, 2006, Bozeman Police Sergeant Steven Crawford (Sergeant Crawford) was on duty and leaving the parking lot of the Filling Station Bar and Grille in Bozeman, Montana.[1] Sergeant Crawford noticed a vehicle parked at an unusual angle within a row of vehicles with its lights on and its engine running. The vehicle belonged to Ditton, who then drove the vehicle out of the parking lot, heading north. Sergeant Crawford followed Ditton's car and noticed it weaving within its lane, crossing the fog line on the right side of the road, and driving on the double yellow centerline. At some point, the vehicle signaled a right turn, but then missed the turn and drove partially off the roadway onto the shoulder. At that point, Sergeant Crawford turned on his emergency lights to signal the vehicle to stop.

¶3 After Sergeant Crawford turned on his emergency lights, Ditton backed up, drove forward, struck a stop sign post, then backed up again and drove forward approximately

---

[1] Some of the underlying facts in this case were previously recited in an unpublished disposition arising out of another appeal by Ditton. *See Ditton v. Dept. of Justice, Div. of Motor Vehicles, State of Montana*, 2008 MT 265N, 2008 WL 2809153.

one car length before coming to a stop. Sergeant Crawford approached the vehicle and Ditton identified himself with his driver's license. Sergeant Crawford observed that Ditton's eyes were glassy and bloodshot, and his speech was slurred. While Ditton was retrieving his insurance information and other required documentation, his movements were slow and methodical. Sergeant Crawford asked Ditton how much he had to drink, to which Ditton replied "not a lot." Sergeant Crawford asked Ditton to step out of his vehicle and perform roadside sobriety tests. Ditton did not perform the tests satisfactorily. Sergeant Crawford then read Ditton the preliminary alcohol screening test advisory, and asked him for a breath sample. Ditton refused to provide a breath sample.

¶4 Sergeant Crawford subsequently arrested Ditton and transported him to the DUI processing center in Bozeman. Once there, Sergeant Crawford read Ditton the implied consent advisory, and Ditton again refused to provide a breath sample. Sergeant Crawford then advised Ditton of his *Miranda* rights, and interviewed him. During the interview, Ditton appeared to Sergeant Crawford to be intoxicated and he smelled of alcohol. Based upon the totality of his investigation, Sergeant Crawford determined that Ditton's ability to safely operate a motor vehicle had been impaired by alcohol consumption, and issued a Notice to Appear and Complaint for DUI. The Notice to Appear and Complaint stated on its face that Ditton did purposefully, knowingly, or negligently operate a motor vehicle while under the influence of alcohol. After issuing Ditton the Notice and processing him, Sergeant Crawford drove Ditton home.

¶5 After the charges were filed against him and bail conditions were set, Ditton filed a motion to suppress, motion to dismiss, and motion to vacate bail conditions. A bench

trial was held in Gallatin County Municipal Court on February 5, 2007. At the trial, Ditton represented himself. Both Ditton and Sergeant Crawford testified at the bench trial.

¶6 After both sides had rested, the Municipal Court issued findings from the bench. First, the Municipal Court denied Ditton's motion to suppress and determined that Sergeant Crawford had particularized suspicion justifying the stop of Ditton. The Municipal Court found that Sergeant Crawford was an experienced police officer, and that his observation of Ditton swerving, touching the centerline for a significant period of time, and taking a wide turn off the roadway, combined with the fact that Ditton had left a bar at a late hour, provided sufficient particularized suspicion to justify the stop. Second, the Municipal Court rejected Ditton's argument that Sergeant Crawford was not authorized to stop Ditton because the detention occurred outside of Bozeman city limits. The Municipal Court determined that under Bozeman Municipal Ordinance and Montana law, Sergeant Crawford had the authority to conduct stops within 5 miles of the Bozeman city limits, and that Sergeant Crawford was within this geographical location—and thus within his jurisdiction as a peace officer—when he made the stop. Third, the Municipal Court found that, based on the testimony presented, Sergeant Crawford had the requisite probable cause to arrest and charge Ditton with DUI. In this connection, the Municipal Court rejected Ditton's argument that a sworn statement by Sergeant Crawford was required to support a judicial determination that probable cause existed to allow the filing of the charge in the Notice to Appear and Complaint. The Municipal Court concluded that such a sworn statement was not required under Montana law and the authority of

4

*State v. Allum*, 2005 MT 150, 327 Mont. 363, 114 P.3d 233. Finally, the Municipal Court imposed a jail term and fines and costs of $885, and ordered that a portion of these fines would be taken from the disability payments Ditton received from the Department of Veterans Affairs.

¶7 Ditton appealed his conviction to the District Court. The District Court affirmed his conviction. First, the District Court found that the Municipal Court's findings of fact in support of Ditton's stop were not clearly erroneous, and that the Municipal Court correctly applied in the law in determining that particularized suspicion existed. Second, the District Court concluded that under § 7-32-4301, MCA, and Bozeman Municipal Ordinance § 2.40.020, Sergeant Crawford had the authority to conduct traffic stops within 5 miles of Bozeman, and that Ditton's stop occurred within this geographical location. Moreover, the District Court noted that under § 46-6-311(1), MCA, peace officers may arrest persons without a warrant if the officer has probable cause to believe that a person is committing, or has committed, an offense. Here, Sergeant Crawford possessed probable cause based on the circumstances to arrest Ditton for DUI.

¶8 The District Court further concluded that the Municipal Court did not err when it denied Ditton's motion to dismiss the Notice to Appear and Complaint. The District Court reasoned that at the time the Notice was issued, Sergeant Crawford had probable cause to arrest and charge Ditton with DUI, and that no sworn statement or affidavit was required to support the filing of the Notice under *Allum*. Additionally, the District Court upheld the imposition of the $885 in fines and costs.

¶9 Ditton now appeals from the District Court's decision, raising several issues. First, he maintains that there was no particularized suspicion justifying the stop. Second, he argues that Sergeant Crawford lacked the authority to stop and arrest him for DUI. Third, Ditton argues that the District Court erred in concluding that his motion to dismiss was properly denied and maintains that the Municipal Court was required to make a judicial determination, supported by a sworn oath or affidavit, that probable cause existed for the DUI charge filed against him in the Notice. Finally, Ditton argues that the Municipal Court erred in requiring him to pay his fines from his Veterans Affairs disability payment, arguing that the Municipal Court was federally preempted from basing his fines on this income.

¶10 On appeal, the State concedes that the Municipal Court erred in imposing fines and costs based on Ditton's Veterans Affairs benefit income. Accordingly, the State recommends that the imposition of $885 in fines and costs be removed from Ditton's judgment and that we remand for an entry of amended judgment. We agree with the State, and order that Ditton's sentence in this regard be remanded for further proceedings consistent with this Opinion. Thus, we state the remaining issues on appeal as follows:

¶11 **Issue One:** *Did the District Court err in concluding there was particularized suspicion to justify Ditton's stop?*

¶12 **Issue Two:** *Did the District Court err in concluding there was probable cause for Ditton's DUI arrest?*

¶13 **Issue Three:** *Did the District Court err in concluding that Ditton was properly charged with DUI in the Municipal Court?*

6

## STANDARD OF REVIEW

¶14 "Pursuant to § 3-6-110, MCA, a district court's review of a municipal court's orders and judgments is limited to a review of the record and questions of law." *City of Billings v. Mouat*, 2008 MT 66, ¶ 9, 342 Mont. 79, 180 P.3d 1121. We review a district court's findings of fact in this context to determine if they are clearly erroneous, and its conclusions of law for correctness. *Mouat*, ¶ 9.

## DISCUSSION

¶15 **Issue One:** *Did the District Court err in concluding there was particularized suspicion to justify Ditton's stop?*

¶16 Ditton argues there was insufficient particularized suspicion to justify his stop. He asserts that his driving behavior did not violate any laws because he stayed within his lane, was not speeding, and because driving on the center line, by itself, is not a crime. Further, he argues that the facts before the Municipal Court were generally insufficient to support a finding of particularized suspicion.

¶17 We disagree. Particularized suspicion to justify an investigative stop is proven by the presentation of "objective data from which an experienced officer can make certain inferences, and a resulting suspicion that a person is or has been engaged in wrongdoing." *Morris v. State*, 2001 MT 13, ¶ 9, 304 Mont. 114, 18 P.3d 1003. Whether particularized suspicion exists is based on the totality of the circumstances. *Morris*, ¶ 9. Here, the odd angle of Ditton's car, the fact that he was leaving a bar late at night, his ensuing driving behavior, and his failure to properly make a right hand turn, provided objective data from which an experienced officer like Sergeant Crawford could suspect that Ditton was

7

driving under the influence. Whether or not Ditton's driving behavior was technically "legal," the totality of the circumstances before Sergeant Crawford provided a sufficient basis for particularized suspicion to justify the traffic stop in this case. *See State v. Brander*, 2004 MT 150, ¶ 6, 321 Mont. 484, 92 P.3d 1173; *Widdicombe v. State ex. rel. Lafond*, 2004 MT 49, ¶ 12, 320 Mont. 133, 85 P.3d 1271. Because Ditton has failed to show that either the Municipal Court or District Court erred in this regard and that any of the findings of fact in this case were clearly erroneous, we affirm the District Court's decision.

¶18    **Issue Two:** *Did the District Court err in concluding there was probable cause for Ditton's DUI arrest?*

¶19    Ditton argues that Sergeant Crawford did not have the authority to arrest him because he was outside Bozeman city limits, and could therefore only effectuate a citizen's arrest. Ditton further maintains that there was insufficient probable cause to justify his arrest. The State argues that Sergeant Crawford did have authority to arrest Ditton in his capacity as a peace officer, and that probable cause for Ditton's arrest was present. We agree with the State and affirm the District Court.

¶20    Ditton's arrest occurred within 5 miles of Bozeman city limits. Under § 7-32-4301, MCA, and Bozeman Municipal Ordinance § 2.40.020, the District Court concluded that Bozeman police officers have the authority to conduct traffic stops within 5 miles of Bozeman. Ditton has not shown this conclusion was incorrect. Thus, Sergeant Crawford had the authority to arrest Ditton in his capacity as a peace officer.

8

¶21    Under § 46-6-311(1), MCA, a peace officer may make a warrantless arrest if the officer has probable cause to do so. "Probable cause to arrest is established if the facts and circumstances within an officer's personal knowledge, or related to the officer by a reliable source, are sufficient to warrant a reasonable person to believe that someone is committing or has committed an offense." *State v. Williamson*, 1998 MT 199, ¶ 12, 290 Mont. 321, 965 P.2d 231. The Municipal Court found probable cause to arrest Ditton was present in this case based on Ditton's overall driving, including striking the stop sign after Sergeant Crawford turned on his emergency lights, and an audio and video recording of the interactions between Sergeant Crawford and Ditton which was presented to the court. The District Court, in reviewing these findings and the evidence before the Municipal Court, noted that Sergeant Crawford had more than sufficient interactions with Ditton to make a probable cause determination. These interactions included Ditton's performance in the field sobriety tests, his overall appearance and level of functionality, and his driving.

¶22    We agree with the District Court that these facts provided sufficient probable cause for Sergeant Crawford to arrest Ditton for DUI. Once again, Ditton has failed to show that any of findings of fact in support of probable cause were clearly erroneous, or that either of the lower courts erred in any respect. Thus, we affirm the conclusion that Sergeant Crawford had probable cause to arrest Ditton for DUI.

¶23    **Issue Three:** *Did the District Court err in concluding that Ditton was properly charged with DUI in the Municipal Court?*

9

¶24 Finally, Ditton maintains that the Municipal Court, and the District Court upon its review, erred in denying his motion to dismiss the DUI charge. Ditton argues that under § 46-11-110, MCA, the Municipal Court was required to examine the complaint and any supporting affidavits and make a judicial determination that probable cause for the DUI charge was present. Ditton argues the Municipal Court failed to do so. Furthermore, Ditton asserts that the Notice to Appear and Complaint, since it was not supported by a sworn oath or affidavit, was insufficient as a matter of law to support the DUI charge in Municipal Court. Accordingly, Ditton asserts that the Municipal Court erred in denying his motion to dismiss the charge against him.

¶25 The District Court correctly determined that the Municipal Court did not err in denying Ditton's motion to dismiss the DUI charge under the authority of *Allum*. In that case, defendant Robert Allum (Allum) was charged and convicted of criminal trespass in Bozeman municipal court. *Allum*, ¶¶ 12-13. His conviction was affirmed by the district court, and he appealed. In challenging his conviction, Allum argued in part that his trial in municipal court violated his rights to due process on account of various "procedural irregularities." One of the claimed irregularities was the State's failure to file a sworn complaint when it prosecuted him in municipal court. We addressed this argument as follows:

> Allum correctly points out that the State did not file a sworn complaint when it commenced its prosecution. An officer signed the complaint, but it was not sworn to. Allum argues that § 46-11-102, MCA, and § 46-11-110, MCA, require the State to file a sworn complaint at the commencement of a prosecution. This is incorrect. Section 46-11-110, MCA, states, "When a complaint is presented to a court charging a person with the commission of an offense, the court shall examine the sworn

complaint or any affidavits, if filed, to determine whether probable cause exists to allow the filing of a charge." This language does not require a sworn complaint to be filed. Instead, it requires the court to examine a sworn complaint if one is filed. Furthermore, § 46-11-102, MCA, does not require a sworn complaint. It states that the prosecution of offenses not charged in district court "must be by complaint." A "sworn" complaint is not mentioned.

*Allum*, ¶ 37.

¶26 Ditton's challenge is nearly identical to the legal argument considered and rejected by this Court in *Allum*. Simply put, a sworn complaint was not required to charge Ditton in Municipal Court with DUI. Because Ditton was not initially charged with DUI in District Court, the Notice to Appear and Complaint by itself and without any supporting affidavits or a sworn oath was sufficient under *Allum*.

¶27 In this connection, it is important to note the distinction between an information or indictment, either of which are required for the filing of criminal charges in *district* court, *see* §§ 46-11-101 and -102, MCA, and the Notice to Appear and Complaint which was filed against Ditton in this case in *municipal* court. Section 46-6-310, MCA, which describes the "notice to appear" provides as follows:

> **46-6-310. Notice to appear.** (1) Whenever a peace officer is authorized to arrest a person without a warrant, the officer may instead issue the person a notice to appear.
> (2) The notice must:
> (a) be in writing;
> (b) state the person's name and address, if known;
> (c) set forth the nature of the offense;
> (d) be signed by the issuing officer; and
> (e) direct the person to appear before a court at a certain time and place.
> (3) Upon failure of the person to appear, a summons or arrest warrant may be issued.

11

¶28 When interpreting a statute, we view it as a part of a whole statutory scheme and interpret in a manner so as to forward the purpose of that scheme. *State v. Burch*, 2008 MT 118, ¶ 27, 342 Mont. 499, 182 P.3d 66. The "notice to appear" occurs in Title 46, chapter 6, MCA, which is entitled "arrest." As § 46-6-310, MCA, itself makes clear, the "notice to appear" is intended to give peace officers an alternative to formal arrest and detention, as happened in this case. Instead of booking Ditton and placing him in jail, Sergeant Crawford issued the Notice and then returned Ditton to his home. The issuance of a notice can of course be challenged, but its legality depends upon whether the peace officer had probable cause to arrest the individual; if probable cause to arrest is lacking, then the issuance of the notice to appear may indeed be infirm.

¶29 However, probable cause to arrest Ditton for DUI was clearly present in this case. Thus, Sergeant Crawford had the option of either formally arresting Ditton and placing him in detention, or issuing the Notice. He chose the latter course. Because probable cause to arrest Ditton was present, and because the Notice does not require a sworn affidavit or oath to be valid, we conclude the District Court did not err in affirming the Municipal Court's decision to deny Ditton's motion to dismiss.

**CONCLUSION**

¶30 We affirm Ditton's conviction for DUI in Municipal Court. However, we remand Ditton's sentence to the District Court with instructions that it vacate the imposition of $885 in fees and costs based on his Veterans Affairs disability benefits.

12

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

Justice James C. Nelson concurs and dissents.

¶31   I concur in the Court's decision as to Issues One and Two and in our remand of Ditton's sentence.  I respectfully dissent from our decision as to Issue Three.

¶32   As I understand Ditton's argument on appeal, it is that the Municipal Court judge did not make a timely determination that probable cause supported the charge filed against him, as is required by § 46-11-110, MCA.  This statute states that "[w]hen a complaint is presented to a court charging a person with the commission of an offense, the court shall examine the sworn complaint or any affidavits, if filed, to determine whether probable cause exists *to allow the filing of a charge*" (emphasis added).

¶33   This was the same issue that Ditton raised in a prior appeal where he argued that the Municipal Court judge did not make a probable cause determination until six months after his arrest.  *See State v. Ditton*, 2006 MT 235, ¶¶ 19-24, 333 Mont. 483, 144 P.3d 783.  The Court faulted Ditton for not providing a transcript of the hearing at which Judge Carlson testified.  *See Ditton*, ¶ 23.  But then, notwithstanding Ditton's omission,

13

the Court concluded that "the inference readily drawn" from the record was that the judge did make a timely determination of probable cause. *See Ditton,* ¶ 23. I discussed this aspect of the *Ditton* decision at length in my dissent, arguing that the Court improperly "inferred" that the Municipal Court judge had complied with § 46-11-110, MCA, in the face of a record that proved she did not. *See Ditton*, ¶¶ 64-94 (Nelson, J., Gray, C.J., & Cotter, J., dissenting).

¶34 The same issue and the same answer dog this case. Ditton claims there was not a timely determination of whether probable cause existed "to allow the filing of [the] charge" as required by the plain language of § 46-11-110, MCA—i.e., that the magistrate failed to make the probable cause determination *before* the charge was filed.

¶35 Capitalizing on the "inference" language from *Ditton*, the State here argues that "sufficient circumstantial facts show the Municipal Court complied with § 46-11-110" because Ditton received notice and an opportunity to be heard, because he refused to provide a breath sample, and because the Municipal Court judge set the matter for trial. This argument simply skirts the issue. The dispositive questions are *when* did Judge Seel make a probable cause determination and was it *before* the charge was filed, as required by § 46-11-110, MCA. The answer in this case is as obvious as it was in *Ditton*. The Municipal Court judge did not make a probable cause determination *before* the charge was filed; he made it, if at all, at some later point in time, probably when he set the case for trial.

¶36 I can no more agree with this approach in the present case than I could in *Ditton*. There is no evidence here that the Municipal Court judge actually made a probable cause

determination *before* the charge against Ditton was filed. Rather, it appears from *Ditton* and the case now before us that as a matter of practice in the Bozeman Municipal Court, charges are filed without a probable cause determination ever being made beforehand.

¶37 Perhaps that is just the way things are done in Bozeman Municipal Court, and perhaps it is done that way because it works. I suspect that this practice is not isolated to Bozeman Municipal Court and that other courts of limited jurisdiction across the state follow this same practice. What I cannot abide, however, is that the courts which follow this practice are ignoring the law—and worse, that this Court lets them get away with it.

¶38 I do not agree that courts of limited jurisdiction and this Court may simply turn a blind eye to a patently unlawful procedure.

¶39 For that reason, I dissent as to Issue Three.

/S/ JAMES C. NELSON

15