

DA 07-0496

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 88

JACKIE A. DEAN,

      Plaintiff and Appellant,

  v.

SANDERS COUNTY, a political subdivision of
the State of Montana, and JOHN DOES 1-10,

      Defendants and Appellees.

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and For the County of Sanders, Cause No. DV 05-97
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          James A. Manley and Ann Moderie, Manley Law Firm, Polson, Montana
John Putikka, Attorney at Law, Thompson Falls, Montana

      For Appellee:

          Maureen H. Lennon and Brian J. Smith, Garlington, Lohn & Robinson,
Missoula, Montana

                Submitted on Briefs: July 2, 2008

                         Decided: March 24, 2009

Filed:

           _____
                      Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Jackie Dean sued Sanders County alleging false imprisonment, negligence and wrongful discharge after the County terminated her employment as an administrative assistant to the county commissioners. The jury returned a verdict in favor of the County and Dean appeals.

¶2 We restate the issues as follows:

¶3 Issue 1: Did the District Court err in denying Dean's motion for a change of venue?

¶4 Issue 2: Did the District Court err in granting the County's motion *in limine*, excluding evidence related to the hiring of the officer in charge of the sting operation that led to Dean's arrest?

¶5 Issue 3: Did the District Court err in admitting evidence gathered after Dean's arrest?

¶6 Issue 4: Did the District Court err in admitting evidence of Dean's past drug use and other wrongful acts?

¶7 Issue 5: Did the District Court err in how it structured the special jury verdict?

**BACKGROUND**

¶8 Sanders County hired Richard Doughty (Doughty) as a reserve law enforcement officer to investigate the use and sale of illegal drugs in the County. Doughty recruited Von Williams (Williams), a known drug user, as a confidential informant to aid in the investigation. Williams told Doughty about a marijuana selling enterprise run out of the

2

Bulldog Video and Deli (the Deli) located in Trout Creek. This business was owned by John and Debbie Rogers. Williams said that Debbie Rogers (Rogers) ran the marijuana distribution business on credit, meaning she would supply marijuana to an individual, and record their debt for the cost of the drugs in a log. Later, the individual would pay Rogers for the drugs and she would credit their account in her log book and give them a receipt.

¶9 Williams expressed concern in exposing Rogers' operation because a person working at the courthouse named "Jackie" might be involved. Doughty verified that the only "Jackie" working at the courthouse was the appellant, Dean. Dean lived in Trout Creek and would often run errands to and from Thompson Falls for the commissioners and her friends and family.

¶10 Doughty set up an undercover operation in which Williams would wear a wire and purchase marijuana from Rogers at the Deli in Trout Creek. During the purchase, Rogers was recorded saying she suspected some black SUVs spotted at the courthouse belonged to drug enforcement agents. She said she asked "Jackie" about the vehicles, and "Jackie" confirmed her suspicion.

¶11 Hearing again about a "Jackie" who worked at the courthouse piqued Doughty's interest, so he asked the sheriff, undersheriff, and Williams about Jackie Dean. Williams said that in the past he gave Dean envelopes at the courthouse which contained money to pay for marijuana advanced from Rogers, along with instructions to deliver the money to

Rogers at Trout Creek. His debt for purchasing marijuana was then reduced by the amount of money in the envelope.

¶12 Based on Williams' information, Doughty set up an undercover operation at the courthouse to determine if Dean might be involved in Rogers' marijuana business. Williams was to go to the courthouse wearing a wire, deliver money to Dean saying it was to pay for marijuana purchased from Rogers, and see if she would cooperate. Thompson Falls Chief of Police Charles Hammet was to observe the transaction. Doughty consulted Robert Zimmerman, the Sanders County Attorney, who told Doughty that Williams must make clear during the exchange the money was for drugs.

¶13 Williams entered the courthouse and approached Dean's work station, which was a window near the commissioner's office. He began talking with Dean about selling some T-shirts. He then gave Dean an envelope marked "Deb" on the outside; the same as his previous deliveries. He said, "I need you to give this to Deb . . . I'm in need for weed." Dean responded, "Shhh!" She took the envelope and told Williams she could not deliver it that night, but could take it in the morning. There is some dispute as to the exact progression of events from this point but, essentially, Williams left, Dean took the money back to her desk and then answered a work-related phone call. Chief Hammet reported the exchange took a total of four minutes.

¶14 Williams met with Doughty immediately after the transaction and said he made clear to Dean the money was for drugs. Doughty later discovered his tape recorder malfunctioned, thus no recording of the transaction exists. Doughty briefed County

4

Attorney Zimmerman on the operation, and Zimmerman told Doughty to take Dean into custody. Eleven minutes after Williams left Dean's work station, Chief Hammet detained her. She consented to a search of her purse, where the envelope was found, and she was then arrested by a deputy sheriff. Doughty said he did not first obtain a warrant for Dean's arrest because he was worried that if she had a chance to call Rogers in Trout Creek, Rogers would destroy evidence of the marijuana distribution business. Dean was incarcerated overnight and released the next afternoon.

¶15 After Dean was arrested, Doughty implemented the next phase of the operation—searching the Deli in Trout Creek. Authorities seized Rogers' log book, which showed Dean purchased marijuana in the past.

¶16 Zimmerman filed a motion for leave to file an information charging Dean with conspiracy to distribute dangerous drugs and distribution of dangerous drugs by accountability, both felonies. The affidavit in support of the motion to file an information contained a recitation of what happened at the courthouse as well as the evidence found during the search of the Deli. The District Court granted leave to file the information. Dean and the State ultimately entered into a deferred prosecution agreement pursuant to § 46-16-130, MCA. Dean complied with the agreement and the information was dismissed.

¶17 After her arrest, the County suspended Dean with pay. The County sent her a letter informing her of its investigation into her possible participation in the illegal distribution of dangerous drugs on county time and using courthouse property to facilitate

the illegal distribution of dangerous drugs. The letter alerted Dean to the possibility of termination if the allegations proved true. Upon the completion of its investigation, the County terminated Dean "for cause."

¶18 Dean sued the County, claiming it was negligent in its hiring, training, and supervision of Doughty, leading to her unlawful arrest and prosecution. Dean also claimed the County lacked probable cause when the deputies arrested her, thus her arrest was unlawful and she was falsely imprisoned. She alleged the County wrongfully discharged her because they lacked good cause to fire her. She further alleged the County knew or should have known she was a credible person and it maliciously prosecuted her.[1]

¶19 Dean filed a motion *in limine* to exclude, *inter alia*, evidence gathered after her arrest. She argued the post-arrest evidence was irrelevant because probable cause must exist at the time of her arrest for it to be lawful. The County argued that evidence of what transpired after the deputy sheriff arrested Dean was relevant to her wrongful discharge claim. The District Court denied the motion *in limine*.

¶20 The County filed a motion *in limine* to exclude any information related to the process of hiring Doughty, claiming it was irrelevant to Dean's claims. The District Court granted the motion.

---

[1] The District Court dismissed the malicious prosecution claim on a motion for insufficient evidence after Dean presented her case-in-chief at trial. Dean has not appealed the dismissal of her malicious prosecution claim.

¶21 The case was tried to a jury in Sanders County. At the end of the first day of trial, while voir dire was still being conducted, Dean's counsel moved for a change of venue on the grounds that many potential jurors heard of or read about the case. According to counsel, an impartial jury could not be empanelled. The court denied the motion.

¶22 The case was submitted to the jury by way of a special verdict form consisting of several questions. Question #1 asked the jury if the County had probable cause to arrest Dean. Question #2 asked the jury if the County had exigent circumstances to arrest Dean. The jury answered "yes" to both questions. As these first two questions were answered in the affirmative, the special verdict form instructed the jury to go to Question #7, skipping questions about negligence and damages for false arrest. Question #7 asked the jury if the County wrongfully discharged Dean. The jury answered "no" to Question #7. Thus, the verdict was in favor of the County on all of Dean's claims. Judgment was entered accordingly. Dean appeals.

## STANDARD OF REVIEW

¶23 Abuse of discretion is the standard of review for the issues raised by Dean. *State v. Pease*, 227 Mont. 424, 432-33, 740 P.2d 659, 664 (1987) (reviewing change of venue for abuse of discretion); *Ele v. Ehnes*, 2003 MT 131, ¶ 18, 316 Mont. 69, 68 P.3d 835 (reviewing the use of a special verdict form for abuse of discretion); *Evert v. Swick*, 2000 MT 191, ¶ 11, 300 Mont. 427, 8 P.3d 773 (reviewing evidentiary rulings for abuse of discretion).

7

## DISCUSSION

¶24 *Issue 1: Did the District Court err in denying Dean's motion for a change of venue?*

¶25 Dean did not move for a change of venue prior to trial. Dean moved for a change of venue at the end of the first day of trial, claiming she could not get a fair jury in Sanders County because many members of the venire panel knew of the case, knew the parties and disapproved of marijuana use. She also claims that inflammatory pre-trial publicity and taxpayer bias made empanelling an impartial jury in Sanders County impossible.

¶26 It is true that many members of the venire panel knew about the events surrounding Dean's arrest, knew Dean and her family, and knew many of the witnesses. However, the record shows the District Court allowed an extensive voir dire, which consisted of private questioning of each venireperson, and liberally granted motions to excuse jurors for cause. Dean's counsel recognized this when making his motion to change venue, remarking, "At this point I think that the significant majority of the people that we've questioned have been excused, and we greatly appreciate and acknowledge the fairness that the [c]ourt has shown to both parties in this process and the [c]ourt has worked very hard to get a jury."

¶27 Our review of the transcript reveals each juror confirmed that their prior knowledge and opinions about witnesses would not interfere with their impartiality. Importantly, Dean makes no claim on appeal that the District Court abused its discretion

8

in denying a challenge for cause to any particular prospective juror. We conclude the District Court did not abuse its discretion in denying Dean's belated motion for a change of venue.

¶28 *Issue 2: Did the District Court err in granting the County's motion* in limine, *excluding evidence related to the hiring of the officer in charge of the sting operation that led to Dean's arrest?*

¶29 Dean alleges the County was negligent in hiring, supervising, and training Doughty and this carelessness led to her being falsely arrested. Dean alleges her unlawful arrest was the tortious event which breached the County's duty to her and caused her damage. Thus, Dean's negligence claim is dependent on whether she was falsely arrested.

¶30 Dean argues the District Court abused its discretion when it granted the County's motion *in limine* to exclude evidence related to the County's hiring of Doughty. The District Court concluded such evidence is irrelevant. Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." M. R. Evid. 401.

¶31 Dean's negligence and false arrest claims rise or fall on what Doughty did as the County's agent—not why the County hired him or his prior experience. How and why Sanders County hired Doughty, his experience in investigating dangerous drug offenses and his experience in supervising confidential informants does little, if anything, to make

9

it more or less probable that Dean was falsely arrested. Evidence that is not relevant is not admissible. M. R. Evid. 402.

¶32 The District Court did not abuse its discretion in granting the County's motion *in limine* to exclude evidence of the County's actions in the hiring of Doughty.

¶33 *Issue 3: Did the District Court err in admitting evidence gathered after Dean's arrest?*

¶34 Dean argues the District Court abused its discretion in denying her motion *in limine* to exclude evidence gathered at the search of the Deli, which occurred after her arrest. According to Dean, admission of what occurred after her arrest is not relevant to whether she was wrongfully arrested, and admitting this evidence confused the jury by leading it to believe the County had probable cause to arrest her.

¶35 Sanders County commissioners testified and stated in their notification letter that to determine whether good cause existed to terminate Dean, they relied in part on the affidavit in support of the State's motion to file a criminal information. The affidavit included information from Rogers' log book, showing Dean purchased marijuana from Rogers in the past. The authorities obtained Rogers' log book after Dean's arrest when they searched the Deli. Thus, the evidence was relevant to Dean's wrongful termination claim.

¶36 To allay confusion, the District Court gave the jury a clarifying instruction:

> There has been evidence in this case that the plaintiff possessed or used small amounts of marijuana in her private life. This information was not known to the defendant when the plaintiff was arrested on August 3, 2004.

10

Therefore, this information was not the basis for probable cause to the arrest on that date and should not be considered by you in your determination whether there was probable cause for the arrest.

As the evidence was relevant to the determination of whether Dean was wrongfully discharged, and the District Court properly instructed the jury that the evidence could not be used to determine if Dean was falsely arrested, we conclude the District Court did not abuse its discretion in admitting the evidence.

¶37 Dean claims damages for false arrest. In order for Dean's arrest to be lawful it is necessary that, at the time of her arrest, the arresting officer had probable cause to believe she committed or was committing an offense and existing circumstances required her immediate warrantless arrest. Section 46-6-311, MCA; *See State v. Hammer*, 233 Mont. 101, 106-07, 759 P.2d 979, 983 (1988); *State v. Hamilton*, 185 Mont. 522, 528, 605 P.2d 1121, 1125 (1980), *cert. denied*, 447 U.S. 924, 100 S. Ct. 3017 (1980).[2] Probable cause is established if "the facts and circumstances within an officer's personal knowledge, or related to the officer by a reliable source, are sufficient to warrant a reasonable person to believe that someone is committing or has committed an offense." *State v. Ditton*, 2009 MT 57, ¶ 21, 349 Mont. 306, ___ P.3d ___.

¶38 Dean argues that without the evidence discovered subsequent to her arrest, there is insufficient evidence for the jury to find probable cause existed to arrest her. Initially, we note that in this civil action it is Dean that must affirmatively prove she was wrongfully

---

[2] Dean does not appeal the jury's finding that exigent circumstances existed justifying her arrest without securing an arrest warrant.

arrested in order to establish the County's liability. Section 26-1-401, MCA. The County is not required to prove probable cause existed to arrest Dean.

¶39 The record contains evidence that before Dean was arrested, the officers knew: Rogers was selling marijuana; someone working at the courthouse named "Jackie" was involved with Rogers; Dean was the only person who worked at the courthouse named Jackie; Rogers said "Jackie" confirmed her suspicion that black SUVs at the courthouse belonged to drug enforcement agents; Williams previously gave Dean money at the courthouse which was credited to his marijuana account with Rogers; Dean took an envelope containing money marked "Deb" from Williams after he said the money was for Rogers and he needed "weed"; Dean said she would deliver the money to Rogers; and, she did not notify law enforcement. The record contains substantial evidence that probable cause existed to arrest Dean. The jury was entitled to accept this evidence as credible. *See Massee v. Thompson*, 2004 MT 121, ¶ 26, 321 Mont. 210, 90 P.3d 394.

¶40 *Issue 4: Did the District Court err in admitting evidence of Dean's past drug use and other wrongful acts?*

¶41 The District Court admitted excerpts from Dean's deposition and testimony from her family members about her regular marijuana use and her account with Rogers for marijuana. The District Court also allowed Sherriff Gene Arnold to testify generally about the drug problems in Sanders County. Dean argues this evidence is inadmissible because it had nothing to do with her arrest and thus is irrelevant. Even if the evidence was relevant, Dean asserts its prejudicial effect outweighs its probative value. She

12

further argues the evidence is not admissible because it is character evidence prohibited by M. R. Evid. 404(b).

¶42 Evidence of Dean's marijuana use is relevant to prove the County terminated her for good cause. While the county commissioners testified Dean's private drug use was not a factor in her termination, her marijuana use in connection with its purchase from Rogers are circumstances tending to prove Dean knowingly took money for "Deb" while on duty at the courthouse for the purpose of assisting Rogers in her marijuana business. Thus, this evidence is admissible as relevant to the issue of whether good cause existed to terminate Dean's employment. M. R. Evid. 401, 402.

¶43 Dean consistently claimed that when Williams gave her the money, she "didn't know what [she] thought" and it "didn't register" the money was for drugs, even though she heard Williams say it was for "weed." The evidence of Dean's marijuana use and her connection to Rogers' marijuana business was offered as proof she knew the money was payment for drugs and she did not mistakenly agree to deliver it to Rogers. The evidence therefore fits within the "knowledge" and "mistake" exceptions to the prohibition of character evidence contained in M. R. Evid. 404(b).

¶44 The District Court has discretion to decide whether the probative value of evidence outweighs it prejudicial effect under M. R. Evid. 403. Under the circumstances of this case, we conclude the District Court did not abuse its discretion in admitting evidence of Dean's marijuana use and of her connection to Rogers.

¶45    *Issue 5: Did the District Court err in how it structured the special jury verdict?*

¶46    Dean argues the District Court erred in its structuring of the special verdict because after the jury determined Sanders County officers had probable cause and exigent circumstances to arrest her, the form instructed the jury to ignore the question of the County's negligence and proceed directly to a decision on the wrongful discharge claim. It seems Dean is claiming that even though the jury found she was lawfully arrested and detained, she may somehow recover damages based on negligence. Just how the County could be liable for damages in effecting a lawful arrest is unclear. We do not locate authorities or formulate arguments for a party in support of positions taken on appeal. *Gudmundsen v. State ex rel. Mont. State Hosp.*, 2009 MT 56, ¶ 26, 349 Mont. 297, ___ P.3d ___.

¶47    The District Court did not abuse its discretion in structuring the special verdict form.

¶48    Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE

14