

DA 07-0703

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 172

CITY OF BILLINGS,

       Plaintiff and Appellee,

  v.

NATHAN STEFAN GRELA,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 06-986
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Jeffrey G. Michael, Attorney at Law, Billings, Montana

       For Appellee:

           Hon. Steve Bullock, Montana Attorney General; Tammy K Plubell,
Assistant Attorney General, Helena, Montana

           Brent Brooks, Billings City Attorney, Billings, Montana

Submitted on Briefs: October 8, 2008

Decided: May 19, 2009

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Nathan Stefan Grela was charged in the Billings Municipal Court with driving under the influence of an intoxicating substance (DUI). The Municipal Court denied Grela's motion to suppress the results of a blood test for the presence of alcohol taken at a local hospital after the accident. Grela then pled guilty, reserving his right to appeal to the District Court. The District Court affirmed the Municipal Court and Grela now appeals to this Court.

¶2 The sole issue on appeal is whether the District Court erred in affirming the Municipal Court's denial of Grela's motion to suppress the results of the blood test because the City did not give him notice that the police officer who ordered the blood test would testify at the suppression hearing as an expert witness.

¶3 In January 2007, Officer Baum arrived at a motor vehicle accident where she found Grela pinned in his pickup truck with his arm hanging out the window. Officer Baum repeatedly yelled at Grela who only responded with a slight movement of his arm. After emergency personnel removed Grela from the scene, Officer Baum noticed several beer cans, both empty and full, and a half-full bottle of whiskey in and around the pickup. She said it reeked of alcohol.

¶4 Officer Jagers arrived on scene after Officer Baum. He observed emergency workers extricating Grela from his pickup and concluded that, based on his experience with other accidents, the injuries suffered by the occupant were significant. At Officer Baum's request, Officer Jagers went to the hospital and secured a blood sample from

2

Grela.  Five days after the accident and while still in the hospital, Grela told Officer Baum he did not remember anything that happened when he first arrived at the hospital.

¶5    After the City charged Grela with DUI, pursuant to § 61-8-401, MCA, he filed a motion to suppress the results of his blood test, contending Officer Jagers ordered his blood drawn illegally because he was conscious and able to refuse the test.

¶6    At the suppression hearing in Municipal Court, Officer Jagers testified to his observations upon his arrival at the hospital:

JAGERS:    When I got to the hospital, um, I again I tried to stay out of the way of everybody.  He was in one of the trauma rooms, they had already sedated him and intubated him due to his injuries.  He had what they call an altered level of consciousness so they use medications to basically sedate him so he won't remember anything.

DEFENSE:    Let me object to this, that, that calls for medical testimony and he's not qualified to give medical testimony.

CITY:    Your Honor, he's already testified that his experience as an EMT as an instructor for EMTs [not objected to by defense counsel] and I think that's just a basic level, he's not doing a diagnosis, he's just telling us what he observed.

COURT:    I'll allow the testimony.

¶7    Officer Jagers testified that when he asked the nurses if Grela was sedated, "they look[ed] at me like I'm dumb, knowing that he's intubated."  When the prosecutor asked Officer Jagers why he did not ask Grela for consent to conduct the blood draw, he said it was because Grela was "unconscious and intubated and unable to respond."  Officer Jagers then testified:

CITY:    And you . . . testified he was unconscious?

3

JAGERS:    Yes, they had sedated him so they could intubate him.

CITY:      Okay.  So that they could intubate him?

JAGERS:    Yes.

CITY:      And is that, in your experience is that standard?

JAGERS:    Yes, yes, it's a procedure called a rapid sequence intubation and I've performed them before.[1]

Grela objected, asserting that if the City wanted to use Officer Jagers as an expert to testify that Grela was sedated and unconscious, it should have disclosed its intent to call him as an expert witness.

¶8     Grela testified he remembered being sedated at the hospital, remembered the tube being inserted in his throat, and remembered his blood being drawn.  He said he was not unconscious and at no time did anyone ask him if they could take his blood.  He said he had lied to Officer Baum when he told her he did not remember what happened upon his arrival at the hospital.

¶9     The Municipal Court denied Grela's motion to suppress, concluding that, based on the best evidence available to the officers at the accident scene and hospital, Officer Jagers' belief that Grela was incapable of refusing the test was reasonable, and thus his blood was legally drawn and admissible.  The District Court affirmed the Municipal Court's decision, reiterating that the police officer properly determined Grela was incapable of refusing the test, based on the best evidence available to him at the time; that

---

[1]  Officer Jagers was a nationally registered paramedic.

is, the mechanism of Grela's injury, Grela's lack of response, and Grela's intubation and sedation. The District Court concluded that while the City should have disclosed Officer Jagers as an expert witness, any officer with experience in serious injuries could testify to the facts that Officer Jagers observed.

¶10    A district court's review of a municipal court's orders and judgment is limited to a review of the record and questions of law. *State v. Ditton*, 2009 MT 57, ¶ 14, 349 Mont. 306, 203 P.3d 806. We review a district court's findings of fact in this context to determine if they are clearly erroneous, and its conclusions of law for correctness. *Ditton*, ¶ 14.

¶11    A person who operates a motor vehicle on the ways of Montana is considered to have given consent to a test of his blood for the purpose of determining the presence of alcohol in his body. Section 61-8-402(1), MCA. A person who is unconscious or who is in a condition rendering him incapable of refusing a blood test is considered not to have withdrawn his consent. Section 61-8-402(3), MCA. A police officer may request medical personnel to draw a person's blood under § 61-8-402(2), MCA, if, based on the best evidence which is reasonably available at the time, he reasonably believes that the person is incapable of refusing the test. *State v. Campbell*, 189 Mont. 107, 114-15, 615 P.2d 190, 194-95 (1980).

¶12    Section 46-15-322(1)(c), MCA, directs the prosecution in a criminal case to disclose any expert reports upon request. Prior to the suppression hearing, Grela, through counsel, requested all expert reports. The prosecution did give Grela's counsel a copy of

5

Officer Jagers' accident report as requested. Grela complains that Officer Jagers' report does not qualify as an "expert" report because it does not contain Grela's medical condition or the basis of Officer Jagers' knowledge on medical procedures. Thus, Grela claims that the Municipal Court and the District Court erred in allowing Officer Jagers to testify as an expert because the City failed to give notice that he would do so.

¶13 At the root of Grela's argument is his assertion that a medical expert's opinion is required to establish that a person is unconscious or otherwise in a condition rendering him unable to refuse a test of his blood. However, § 61-8-402, MCA, as interpreted by this Court in *Campbell*, gives the officer ordering the test the authority to judge whether an individual is capable of refusing a blood test based on the best evidence which is reasonably available at the time. *Campbell*, 189 Mont. at 114-15, 615 P.2d at 194-95. Calling a medical expert to attest to Grela's level of consciousness was not necessary.

¶14 The City gave Grela a copy of Officer Jagers' report as requested. Thus, Grela had notice that Officer Jagers would testify as to the reasons underlying his belief that Grela was incapable of refusing the blood test. While Officer Jagers could qualify as an expert to some degree based on his training as a paramedic, his expertise was not necessary in order to establish he reasonably believed Grela was incapable of refusing to have his blood drawn. Officer Jagers knew Grela had been in a serious accident and he had been taken to the hospital where he was sedated, intubated, and appeared unconscious. Grela's testimony that he was conscious and aware was of questionable

6

veracity. Based on the record, the Municipal Court did not err in denying Grela's motion to suppress. The District Court correctly affirmed the Municipal Court's decision.

¶15 Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ JAMES C. NELSON

Justice James C. Nelson concurs.

¶16 I concur in the Court's Opinion. It also seems to me that Grela's entire argument is premised on a fundamental misconception—that Officer Jagers was testifying as an expert witness. Officer Jagers was doing nothing more than relaying his personal observations of Grela's condition and status in the emergency room. The fact that Officer Jagers had more understanding of what he observed because of his unique paramedic training and experience did not, necessarily, make him an "expert." Officer Jagers was simply a better-informed lay witness, and it was in that capacity he testified.

/S/ JAMES C. NELSON

7